Carroll
No. 78-209

TOWN OF TUFTONBORO

v.

LAKESIDE COLONY, INC. *& a.*

LAKESIDE COLONY, INC.

v.

TOWN OF TUFTONBORO *& a.*

June 20, 1979

446

*James J. Kalled*, of Wolfeboro, by brief and orally, for town of Tuftonboro and its Planning Board.

*Sands & Patten*, of Ossipee (*James R. Patten* orally), for Lakeside Colony, Inc., Eastern Land and Lumber Co., Inc., and Southern Vermont Land, Inc.

LAMPRON, C.J.    The town of Tuftonboro brought this petition for a permanent injunction to enjoin the owner, Lakeside Colony, Inc. (Lakeside), and realtors, Eastern Land and Lumber Co., Inc. and Southern Vermont Land, Inc., its agents, from selling cottages in a cottage colony until the subdivision regulations of the town were complied with. Lakeside brought a petition for a declaratory judgment that the proposed land use was not a subdivision as defined by the town's ordinance and the State enabling act.

The Trial Court (*Keller*, C.J.) held that Lakeside's plan to sell stock that entitled each purchaser to the exclusive use and occupancy of a particular cottage in the colony constituted a division of property that would require approval by the town's planning board. TUFTONBORO, N.H., LAND DIVISION REGULATIONS § 3:12. The court further ruled

that Lakeside was bound by the planning board's previous denial of its petition for approval of its plan, and assessed Lakeside a penalty of $1,400 in accordance with section XII of the town's subdivision regulations. The court refused, however, to enjoin the sales because they were already completed and Harrington Corporation (Harrington), Lakeside's sales agent, was not a party to these proceedings. Lakeside seasonably excepted to the trial court's findings, rulings, and decree and to the denial of its motions to set aside and to reconsider. These exceptions were reserved and transferred. We overrule Lakeside's exceptions and affirm the trial court's decision.

The issues to be decided are (1) whether the definition of a subdivision in the town's land subdivision regulations (section 3:12) is within the definition authorized by the enabling act (RSA 36:1 VIII); and (2) whether under the town's regulations Lakeside's plan for the use of the property in question constitutes a subdivision under the jurisdiction of the Tuftonboro Planning Board.

The land and buildings known as "Lake Breeze Lodges" are situated on a parcel of land which is bounded on Route 109 and has 135 feet of frontage on Lake Winnipesaukee, in Tuftonboro. The property consists of 2.5 acres of land, upon which there are fifteen structures. Thirteen of these are self-contained seasonal cottages, one is adapted for year-round use and there is a main residence that is also constructed for year-round use. From 1940 to 1977, the property was owned in its entirety by persons who operated it as a seasonal cottage colony. Specifically, the owner of the land rented the cottages during the summer months to persons who would occupy the cottages and use the beach and other recreational facilities. In the fall of 1976, Mrs. Lorraine I. Spencer, the owner of Lake Breeze cottages, entered into negotiations for the sale of the land and cottages to Lakeside. A purchase-and-sale agreement was signed and Mrs. Spencer transferred the entire parcel to Lakeside, for a price of $135,800.

Lakeside was incorporated in Massachusetts for the purpose of buying and owning real estate for the use of the corporation and its stockholders. Lakeside issued to the Harrington Corporation (Harrington), not a party to these proceedings, 1,500 shares of its stock. The two corporations planned that Harrington would sell shares of the corporation in minimum blocks of 100 shares. The purchaser of each block would have the exclusive right to the use of one specific cottage. The purchase-and-sale agreement expressly indicated, the "use" of which building was being purchased. According to the proposed corporate bylaws, the shareholders would

not pay any rent; they would only be assessed annually for maintenance costs, including the upkeep of the common areas.

. When the town learned that Lakeside did not intend to continue the seasonal cottage rentals, but instead planned to dispose of the cottages in the manner outlined, the town filed for a permanent injunction. The town specifically sought to prevent Lakeside from advertising or selling any portion of the property until a formal subdivision application had been made and approved by the town's planning board. Lakeside, in turn, filed a petition for declaratory judgment seeking a declaration that the proposed corporate plan to sell shares of stock was not a subdivision as defined by either the town's subdivision regulations or the enabling statute.

■■ "The imposition of subdivision controls is an exercise of the police power, and it seeks to accomplish the orthodox ends of the police power by serving the health, safety, morals, and general welfare of the community." 4 R. ANDERSON, AMERICAN LAW OF ZONING § 23.04, at 52 (2d ed. 1977). It is well established that the State has the power to pass enabling legislation authorizing the municipalities to regulate the development of subdivisions. *Blevens v. City of Manchester*, 103 N.H. 284, 170 A.2d 121 (1961). Municipalities that attempt to exercise this delegated power can only do so in a manner that is consistent with the provisions of the enabling statute. 4 E. YOKLEY, ZONING LAW AND PRACTICE, § 17–3 (4th ed. 1979); *see Seal Tanning Co. v. City of Manchester*, 118 N.H. 693, 393 A.2d 1382 (1978); *Lavallee v. Britt*, 118 N.H. 131, 383 A.2d 709 (1978); Baldwin, *Town Planning, Subdivision Regulations, and Zoning*, 18 N.H.B.J. 125 (1976).

The defendant argues that Tuftonboro has enlarged upon the legislative definition of subdivision. At the time that Lakeside purchased the property, the State enabling legislation defined a subdivision as:

> [t]he division of the lot, tract, or parcel of land into 2 or more lots, plats, sites, or other divisions of land for the purpose, whether immediate or future, of sale, or building development. It includes resubdivision and, when appropriate to the context, relates to the process of subdividing or to the land or territory subdivided. The division of a parcel of land held in common and subsequently divided into parts among the several owners shall be deemed a subdivision under this chapter.

RSA 36:1 VIII (Supp. 1975) (amended Supp. 1977).

The town of Tuftonboro, however, defines a subdivision as:

The division of a lot, tract, or parcel of land into two or more lots, plats, sites, or other division of land for the purpose, whether immediate or future, of sale, *lease,* or building development. It includes resubdivision, and when appropriate to the context, relates to the process of subdividing or to the land or territory subdivided. The division of a parcel of land held in common and subsequently divided into parts among several owners shall be deemed a subdivision. *Lease* of land for the erection or placement of any building or structure is included in this definition. The development for agricultural, forestry, and mining is excluded.

Land Subdivision Regulations, Town of Tuftonboro, Section III, 3:12 (1974). (Emphasis added.)

The town attempts to include within its definition a division of land for the purpose of leasing arrangements, whereas no such provision appears in the enabling legislation. The town's definition is more expansive than the definition recited in the enabling legislation. Municipalities taking advantage of the powers granted by the statute are bound by the legislative definition. *City of Portsmouth v. John T. Clark & Son, Inc.,* 117 N.H. 797, 798, 378 A.2d 1383, 1384 (1977). They have no power to expand the statutory definition of subdivision. *Boulder Corp. v. Vann,* 345 So. 2d 272, 275 (Ala. 1977); *Town of Arundel v. Swain,* 374 A.2d 317, 319 n.3 (Me. 1977). *See generally* 3 E. YOKLEY, ZONING LAW AND PRACTICE, § 17.4 (4th ed. 1979). Accordingly, the provisions in the town's subdivision ordinance which expand upon the definition must be set aside to the end that the definition of a subdivision in the ordinance shall correspond with that set forth in the statute. Therefore the town subdivision ordinance does not apply to divisions of land through leasing arrangements. (It must be noted that under the present law the towns have the power to control land divisions for the purpose of "sale, rent, lease, condominium conveyance or building development." RSA 36:1 VIII (Supp. 1977). Because this amendment became effective after the property was sold, the parties agreed that it does not apply to the present case.)

This holding, however, does not end our inquiry; we must still ascertain whether under the definition of the enabling legislation a subdivision has been created so that the town's planning board has jurisdiction over the corporate land use. The statutory enactment provides two definitions of subdivision; first, there must be a *"division*

of the lot, tract, or parcel of land into two or more lots, plats, sites or other divisions of land for the purpose of . . . *sale* or of building development (emphasis added); or second, a division of a parcel of land held in common and subsequently divided into parts among the several owners." RSA 36:1 VIII (Supp. 1975) (amended Supp. 1977). For the purposes of this opinion, we will only be concerned with the first definition; specifically, whether there has been a division of property for the purpose of sale. We will consider first the sale requirement. The defendant steadfastly maintains that there has been no division or sale of an interest in realty but only the sale of interest in personalty.

It is paramount to determine whether by the sale of corporate stock there has been a sale of an interest in realty or personalty. At first glance it would appear that the shareholder's interest is more in the nature of personalty rather than realty. This is because under the corporate bylaws the shareholders have only a right to corporate stock, and this "is generally considered an intangible personal property or a chose in action . . . since the corporation is distinct from the shareholders, no one of whom has a right to receive legal title to any specific property of the corporation." Note, *Legal Characterization of the Individual's Interest in a Cooperative Apartment: Realty or Personalty*, 73 COLUMBIA L. REV. 250, 254 (1973), (hereinafter *Legal Characterization*). Nevertheless,

> [i]t should not be forgotten . . . that these classifications [whether realty or personalty] are but short-hands for policy judgments as to the proper treatment of certain types of property under specified sets of circumstances; to approach the question of the proper characterization of the cooperative interest without reference to those policies is clearly improper. Similarly, to decide questions of characterization without reference to the context in which such classifications must be made is an equally sterile exercise.

*Id.* at 250, 251.

Lakeside's corporate plan must be viewed as a whole to determine the exact nature of the interest that has been transferred. *See United Housing Foundation, Inc. v. Forman*, 421 U.S. 837 (1975); *State v. Silberberg*, 166 Ohio St. 101, 139 N.E.2d 342 (1956). One factor to consider is the manner in which Lakeside marketed the stock. The advertisements informing the public of the sale are particularly relevant. Two of them read as follows:

Lake Winnepesaukee
Wolfeboro
$16,900

Completely furnished cottage
Large screen porch
Can be winterized for four-season use.
Beautiful sandy beach.
Unbelievable bargain. Owner will
finance with small down payment.

* * * *

Lake Winnipesaukee

4 Bedroom cottage on Lake Winnipesaukee.
Large living room and kitchen, screened
porch. Total Price $22,900.

There can be no doubt that the advertisements attempted to attract purchasers to buy an interest in realty. Moreover, the stock-and-sale agreements indicate that the purchaser is entitled to the exclusive use of a specific cottage. In other words, the owner's interest in real property is clearly identifiable by the instruments of sale. "Thus, at any point in time, the [shareholder] not only knows what the value of his share of the corporate assets are [sic] but also can identify the real property source of his value." *Legal Characterization supra* at 254 n.32.

The rights conferred by the ownership of the shares must also be considered. The shareholder by his ownership of the shares is entitled to an indefinite period of occupancy of a particular cottage. In addition, "[o]wnership . . . creates an asset for the [shareholder], an equity that may be devised, alienated or borrowed against." *Legal Characterization supra* at 258. Moreover, there are certain tax benefits that may accrue to the shareholder. "Section 216(a) of the Internal Revenue Code permits the tenant-stockholder to deduct amounts representing his proportionate share of real estate taxes and interest charges paid by the . . . corporation." *Id.* at 259. "These tax benefits are nothing more than that which is available to any homeowner who pays interest on his mortgage." *United Housing Foundation, Inc. v. Forman,* 421 U.S. 837, 855 (1975).

█ In sum it appears that the "economic reality" of the rights conferred on the owners of Lakeside's corporate shares approximates those enjoyed by owners of a fee interest. *United Housing Foundation, Inc. v. Forman,* 421 U.S. at 848. Therefore we hold that there has been

a purchase and "sale" of an interest in real property which falls within the scope of the definition of subdivision in the enabling statute. *See* RSA 479-A:3 (Unit Ownership).

The final requirement is that there be a "division" of a large tract of land into two or more smaller tracts or parcels. RSA 36:1 VIII (Supp. 1975) (amended Supp. 1977). The defendants contend that there has been no division because the corporation remains legal title holder to the one tract of land. We see little reason to deny the planning board jurisdiction when a developer concocts an artificial scheme for the purpose of evading subdivision regulations. By its scheme, one tract of land has been parcelled into fifteen tracts. Each shareholder has the right to exclusive use and occupancy of a specified tract for an indefinite period so long as he retains ownership of the stock. In essence, the separate ownerships and exclusive uses to the cottages that were sold by Lakeside and Harrington have divided the ownership of the single tract of land. *See Isabelle v. Town of Newbury*, 114 N.H. 399, 321 A.2d 570 (1974); *Town of Arundel v. Swain*, 374 A.2d 317 (Me. 1977) (proposed campground did not divide single tract of land). Therefore, we hold that Lakeside's scheme is a "division" for the purposes of the subdivision regulations.

Courts have unrelentingly pierced artificial devices that have been created to circumvent the provisions of subdivision regulations. *See, e.g., Pratt v. Adams*, 229 Cal. App. 2d 602, 40 Cal. Rptr. 505 (1964); *Mount Laurel Township v. Barbieri*, 151 N.J. Super. 27, 376 A.2d 541 (1977). *See generally* Case Comment, *Evasion of Subdivision Control Legislation*, 11 OSGOOD HALL L.J. 335 (1973). Indeed, were we to hold that the present scheme does not fall within the purview of the subdivision regulations, we "would make a mockery of the . . . subdivision statute." *Mount Laurel Township v. Barbieri*, 151 N.J. Super. at 37, 376 A.2d at 546. Accordingly, we overrule defendant's exceptions, and affirm the trial court's imposition of a penalty on Lakeside for selling the cottages without obtaining subdivision approval.

*Exceptions overruled.*

All concurred.