Belknap
No. 81-164

## LSP Association

v.

## Town of Gilford Planning Board

June 11, 1982

*Sulloway, Hollis & Soden,* of Concord (*Robert M. Larsen* on the brief and orally), for the plaintiff.

*Nighswander, Lord, Martin & KillKelley,* of Laconia (*Walter L. Mitchell* and *James L. Burke* on the brief, and *Mr. Mitchell* orally), for the defendant.

Batchelder, J.  This case involves an appeal from the Superior Court's (*Cann,* J.) approval of the Master's (*Robert A. Carignan,*

Esq.) *recommended ruling that the Gilford Planning Board was without power to review a reorganization of campsites by LSP Association (LSP). We affirm.*

LSP owns one hundred twenty-eight acres of land bordering Lake Winnipesaukee in Gilford, New Hampshire. There are summer cottages and trailers on approximately six to eight acres of this land. Ten to fifteen percent of the residents of these facilities occupy them year-round. LSP has no stockholders, but has members, all of whom own mobile homes or camps within the park. Each member has a voting certificate entitling him to membership, voting privileges and the right to elect a Board of Directors. Each member's right to use a site inside the park arises from his execution of a "Dwelling Unit Rights Agreement." The location of each member's dwelling unit is determined by the directors. The member's right to a location can be easily terminated by the directors, and his use of the site is restricted in many ways.

In 1979, LSP planned to "decongest" the park by moving the existing campsites to other areas of the park. There was no increase in the number of units in the park, but simply their relocation to reduce the density of the existing residential pattern. LSP informed the town of its plan in order to keep the local officials aware of what was going on. LSP's relocation plan was given to the town's planning board, which thereafter asserted jurisdiction under its then-existing subdivision ordinance. The ordinance defines a "subdivision" as:

> "[T]he division of a lot, tract, or parcel of land into two (2) or more lots, plats, sites, or other divisions of land for the purpose, whether immediate or future, of sales or of building development. . . . The division of land held in common and subsequently divided into parts among the several owners, shall be deemed a subdivision."

GILFORD SUBDIVISION ORDINANCE § III(P); *see also* RSA 36:19.

The master concluded that the planning board, when it took up the issue, did not have jurisdiction under its subdivision ordinance because LSP's relocation plan did not involve a subdivision of land. Lots would not be created for sale or additional development, nor did the plan divide land holdings among several owners.

The Town of Gilford argues that the plan comes under its subdivision regulation. First, the town asserts that the relocation of a structure on a designated site with clearly defined boundaries meets the wording of the ordinance. The town also argues that the master erred in concluding that LSP's plan did not call for a "sale" or "building development". The town cites *Town of Tuftonboro v.*

*Lakeside Colony, Inc.*, 119 N.H. 445, 451–52, 403 A.2d 410, 413–14 (1979), for the proposition that courts, in determining when a sale has taken place, will look to the "economic reality" of the situation: what an association member actually gets in terms of a right to exclusive and definite occupancy of a specific piece of land. The town also argues that this plan envisions considerable development, including road construction and extensions of public services, that brings the plan within the meaning of the ordinance, and thereby enables the planning board to review it.

■ The validity of the master's ruling must be determined in the light of the law applicable at the time. The question presented to him required the application of the subdivision definition in effect on April 21, 1980, the time the planning board asserted jurisdiction. The master did not commit clear error when he concluded that there was no division of land for sale or development under Gilford's ordinance. In *Tuftonboro*, the defendant therein sold shares to another corporation, which was, in turn, to sell shares, in 100-share blocks, to individuals who would each receive the right to use one specific cottage exclusively. We construed this transaction as a sale of parcels of land. The court relied heavily on the fact that the advertising for the shares emphasized the specific cottage to be received and deliberately created the impression that the buyer would obtain an interest in realty. *Town of Tuftonboro*, 119 N.H. at 450–51, 403 A.2d at 413. In the present case, however, the land continues to be owned by LSP. It is not held in common by the members but is owned by the association. The members have none of the advantages of the stock purchasers in *Tuftonboro*: entitlement to an indefinite period of occupancy of a particular cottage and tax benefits, and also ownership that created an asset for shareholders that could be devised, alienated, or borrowed against. All that would change is the site within LSP's property upon which one could locate, to be decided in their discretion by the board of directors. There is no division of property, nor any sale under the facts as given. *See Town of Arundel v. Swain*, 374 A.2d 317, 320 (Me. 1977).

■ The aim of the *Tuftonboro* court was to avoid legitimizing artificial devices that individuals use to circumvent provisions of subdivision regulations. We find the facts here to be clearly distinguishable, and they do not indicate any division of property.

■ The town also argues that it had jurisdiction to review LSP's reorganization under its nonresidential site-plan regulations. *See* Laws 1965, 260:3. Because the alleged jurisdiction of the plan-

540

ning board was premised on its subdivision power, and not its site-plan review power, we will not consider this issue.

*Affirmed.*

All concurred.