Carroll
No. 83-303

## JOSEPH F. DUGAS, TRUSTEE

### v.

## TOWN OF CONWAY

July 3, 1984

*Dickson, Fauver & Cooper*, of North Conway (*Randall F. Cooper* on the brief and orally), for the plaintiff.

*Hastings & Son*, of Fryeburg, Maine (*Peter G. Hastings* on the brief and orally), for the defendant.

DOUGLAS, J.   The plaintiff appeals the decision of the Superior Court (*Wyman*, J.) denying his motion for attorney's fees and double costs. He argues that a plaintiff who is compelled to bear the financial burden of the administrative and judicial process, to protect his

clearly established property right from an unconstitutional taking, is entitled to attorney's fees and double costs.

The record reveals the following facts. The plaintiff, Joseph F. Dugas, is the owner of the Conway Shopping Center in Conway, New Hampshire. The Great Atlantic & Pacific Tea Company, Inc. (A & P) was a long-time lessee of the largest store in the plaintiff's shopping center. In February 1981, A & P ceased its business operations. It continued its lease obligation, however, until May 1982, when the plaintiff and A & P agreed to terminate their lease agreement. Shortly thereafter, the plaintiff leased the store to the William Carter Company d/b/a Carter's Factory Outlet.

During the term of A & P's lease, a free-standing sign was erected at the southerly end of the shopping center's parking lot for the use of the A & P store. The sign consisted of a concrete base with an iron pole, topped by a flat plate to which the message portion of the sign was attached. The message portion of the sign bore A & P's internally lit plastic logo until February 1981, when it was removed by the A & P. The concrete base, iron pole, flat plate and exposed wires remained in place.

On March 9, 1982, the defendant, the Town of Conway, amended its zoning ordinance to include regulations and limitations on outdoor advertising. More specifically, the amended zoning ordinance regulated the use of free-standing signs. It provided, in pertinent part, that "[w]here two or more businesses are located in a single building . . . only one free standing sign [per lot, not greater than 40 square feet message area,] is permitted." The ordinance further stated that "signs shall not be illuminated from within . . . ."

Addressing the regulations' impact on existing and non-conforming signs, Article VI(E)(2)(c) of the amended zoning ordinance provided:

> "Every sign lawfully in existence at the time of adoption of this ordinance may continue in existence and be maintained but shall not be altered structurally or enlarged, or moved unless it be made to comply with the provisions of this ordinance and a permit obtained.

> Any non-conforming sign the use of which has been discontinued for a period of one year or that has been damaged 100% shall not be reestablished, restored, or repaired unless it is made to comply with this ordinance."

In June 1982, the plaintiff employed Gemini Sign Associates, of Conway, to design a replacement message area advertising the Carter's Factory Outlet, to place on the free-standing sign previously used by the A & P. On June 28, 1982, pursuant to the town's zoning

ordinance, the plaintiff applied for a permit to erect the message portion of the sign. The plaintiff designated the sign as a pre-existing, non-conforming use.

Without directly addressing whether the sign was, in fact, a pre-existing, non-conforming use, the town selectmen denied the plaintiff's application for a permit. The town cited two reasons for the denial: (1) The proposed sign was internally lit; and (2) the sign would constitute a second free-standing sign on the lot.

The plaintiff appealed the selectmen's decision to the Conway Zoning Board of Adjustment (ZBA). A public hearing was held on July 20, 1982. The issue before the ZBA was whether the plaintiff's sign was a pre-existing, non-conforming use. After discussing the matter, the ZBA voted unanimously to uphold the decision of the town selectmen. The plaintiff's application for a rehearing was denied. The plaintiff then appealed to the superior court pursuant to RSA 31:77 (Supp. 1983).

The issue before the superior court was the applicability and validity of Article VI(E)(2)(c) of the amended zoning ordinance wherein it was provided that "any non-conforming sign the use of which has been discontinued for a period of one year or that has been damaged 100% shall not be reestablished, restored, or repaired unless it is made to comply with this ordinance." After a hearing, the Master (*Charles T. Gallagher*, Esq.) concluded that the provision was invalid and recommended that the court issue a decree vacating the decision of the ZBA. The Superior Court (*Wyman*, J.) approved the master's recommendation.

In so recommending, the master stated that although RSA 31:60 empowers towns to regulate the use of signs, *see Town of Jackson v. Town and Country Motor Inn, Inc.*, 120 N.H. 699, 422 A.2d 1034 (1980), under RSA 31:62, a pre-existing structure such as a sign must be "grandfathered." He found that Article VI(E)(2)(c) of the zoning ordinance "exceeds the limitations imposed by RSA 31:62 in that the section extinguishes non-conforming uses and permits an unconstitutional taking of vested property rights." He then concluded that the plaintiff's sign, as it existed on March 9, 1982, was an existing structure, even though it was temporarily out of use, and therefore, the use of the sign could not be terminated by the town without just compensation.

The plaintiff then filed a motion for attorney's fees and double costs. The superior court denied the motion, "being unable to determine bad faith on the part of the defendant nor that the defendant's position was frivolous." The plaintiff's motion for a rehearing was denied, and this appeal followed. The sole issue raised on appeal is

whether the trial court erred in denying the plaintiff's request for attorney's fees and double costs.

The plaintiff argues that under *Burrows v. City of Keene*, 121 N.H. 590, 601, 432 A.2d 15, 22 (1981), a plaintiff who is compelled to bear the financial burden of protecting his clearly established property right from an unconstitutional abuse of power is entitled to attorney's fees and double costs.

The town argues that RSA 31:86, which provides that "[c]osts shall not be allowed against the board unless it shall appear to the court that it acted . . . in bad faith . . . in making the decision appealed from," controls this appeal. Thus, the town argues that, absent a showing of bad faith, the plaintiff may not recover attorney's fees and double costs.

Although RSA 31:86 requires a finding of bad faith, that provision pertains to costs which may be allowed against a board of adjustment; it does not address the situation in which a town is alleged to have interfered with the fundamental property rights of a plaintiff.

In *Burrows*, we held that the city's zoning amendment amounted to an unconstitutional taking of the plaintiffs' fundamental right to an economically viable use of their property. *Burrows*, 121 N.H. at 601, 432 A.2d at 22. We found that the regulation at issue did not come "anywhere near the line dividing constitutional and unconstitutional regulation." *Id.* at 600, 432 A.2d at 21. "Because a citizen should not be compelled to bear the financial burden of protecting himself from unconstitutional abuses of power, we [held] that [the] plaintiffs [were] entitled to reasonable counsel fees and double costs incurred in [the] appeal." *Id.* at 601, 432 A.2d at 22. In effect, we concluded that there was no valid issue of conflict concerning the plaintiffs' clearly established property right.

The plaintiff in the case before us argues that he was forced to seek judicial recourse to protect himself from an unconstitutional taking and, therefore, that he likewise is entitled to attorney's fees and double costs. The town argues that if we find an unconstitutional abuse of power in the instant case, then virtually every decision made by a town, which is later reversed, would implicate constitutional rights, thus entitling plaintiffs to attorney's fees and double costs. Such an assertion is overbroad.

We begin our analysis by noting that RSA 31:62, a section of the subdivision of RSA chapter 31 which empowers towns to enact zoning ordinances, provides that "[a] regulation made under this

subdivision shall not apply to existing structures . . . ." In 1980, in a case involving the zoning regulations of the town of Jackson, a town near Conway, we held that "[i]t is clear that . . . signs . . . are 'structures' within the meaning of RSA 31:62." *Town of Jackson v. Town and Country Motor Inn, Inc.* 120 N.H. 699, 701, 422 A.2d 1034, 1035 (1980).

In reviewing the record before us, we observe that the town of Conway's amended zoning ordinance, adopted in March 1982, two years after our decision in *Town and Country Motor Inn, Inc.*, defined a "structure" as "anything constructed or erected with a fixed location on or in the ground, or attached to anything having a fixed location on the ground *but shall not mean a . . . sign.*" (Emphasis added.) It appears that the town thus attempted to enlarge its statutory power regarding the regulation of pre-existing uses by *excluding signs* from the definition of a "structure."

█ It is well established in this State that cities and towns have only those powers which are granted to them by the legislature. *Seabrook Citizens v. Yankee Greyhound Racing, Inc.*, 123 N.H. 103, 108, 456 A.2d 973, 975 (1983). "Municipalities that attempt to exercise . . . delegated power can only do so in a manner that is consistent with the provisions of the enabling statute." *Town of Tuftonboro v. Lakeside Colony, Inc.*, 119 N.H. 445, 448, 403 A.2d 410, 412 (1979). Cities and towns may regulate the use of signs because a sign is considered a "structure" within the meaning of RSA 31:60–:89, the enabling statute. A town cannot expand its power to regulate pre-existing signs by choosing to exclude signs from the definition of "structure" in its ordinance, because its only power to regulate signs is derived from the definition of "structure" as including signs. *See Town of Jackson v. Town and Country Motor Inn, Inc. supra.*

█ The authority of a town, pursuant to its police power, to regulate the use of land and buildings by the enactment of zoning ordinances and similar laws to promote the general welfare of the community, although well established and generally given "wide range," is thus not unlimited. *Loundsbury v. City of Keene,* 122 N.H. 1006, 1009, 453 A.2d 1278, 1280 (1982). The police power is restricted by the express provisions of State statutes and by the specific guarantees of the Bill of Rights of our State Constitution.

The New Hampshire Constitution guarantees the natural and inherent right of all persons to acquire, possess, and protect property. N.H. CONST. pt. I, art. 2. Furthermore, it protects all persons in the enjoyment of their property and provides that property shall not be taken without just compensation. N.H. CONST. pt. I, art. 12.

"[W]e have specifically stated that both N.H. CONST. pt. I, art. 2 and N.H. CONST. pt. I, art. 12 'are limitations on the so-called police power of the State and subdivisions thereof . . . .'" *Burrows v. City of Keene*, 121 N.H. 590, 596, 432 A.2d 15, 18 (1981) (quoting *L. Grossman & Sons, Inc. v. Town of Gilford*, 118 N.H. 480, 482, 387 A.2d 1178, 1180 (1978)).

Moreover, we previously have held that these constitutional provisions apply to non-conforming uses. *Loundsbury v. City of Keene, supra* at 1009, 453 A.2d at 1280. Hence, "a past use . . . [creates] vested rights to a similar future use, so that a town may not unreasonably require the discontinuance of a nonconforming use." *Loundsbury v. City of Keene, supra* at 1009, 453 A.2d at 1280.

Of course, "[t]his is not to say that every regulation of private property through the police power constitutes a taking." *Burrows v. City of Keene, supra* at 598, 432 A.2d at 19. *See Metzger v. Town of Brentwood*, 117 N.H. 497, 502–03, 374 A.2d 954, 958 (1977). Reasonable regulations, aimed at promoting the health, safety and general welfare of the community, may not require compensation. *Id.* Such regulations are proper exercises of the police power.

Zoning regulations and similar enactments, by their very nature, restrict the use of property and adversely affect individual rights. In most cases, zoning regulations, and proceedings thereunder, will not amount to unconstitutional abuses of power. Furthermore, it is obvious that the mere reversal of a town's decision, on appeal, will not render that town's action an unconstitutional abuse of power. Ordinarily, there will be a sufficiently valid issue of conflict concerning the validity or applicability of a zoning or land use regulation. Thus, in such cases, plaintiffs will not be entitled to the award of costs and attorney's fees.

In the case before us, however, the master *specifically found* that the zoning regulation at issue was invalid because it extinguished non-conforming uses and constituted an *unconstitutional taking* of vested property rights. He further concluded that the use of the plaintiff's sign could not be terminated without just compensation. We also noted above that in defining "structures" not to include "signs" the town had exceeded its statutory authority. After reviewing the record, we conclude that the master applied the correct law and properly determined, based upon the evidence before him, that the regulation at issue and the resultant denial of the plaintiff's application constituted an unconstitutional taking of a vested property right. *See Durant v. Town of Dunbarton*, 121 N.H. 352, 357, 430 A.2d 140, 144 (1981).

The substantive issue raised in this case involves a principle "that lies at the very foundation of civilized society as we know it." *Burrows v. City of Keene*, 121 N.H. 590, 595, 432 A.2d 15, 18 (1981). "The principle that no man's property may be taken from him without just compensation reaches at least as far back as 1215 . . . [in] the Magna Carta." *Id.* Hence, it is a clearly defined and established right that the instant plaintiff sought to secure.

Furthermore, we conclude that the regulation at issue did not come anywhere near the line dividing constitutional and unconstitutional regulation, because it resulted in the unconstitutional taking of a vested property right by the town by not *properly* "grandfathering" pre-existing, non-conforming uses. Our State Constitution "prohibits any taking of private property by whatever means without compensation . . . ." *Id.* at 597, 432 A.2d at 15.

Hence, in the instant case, we are not concerned merely with the erroneous application of a valid zoning regulation or some arcane procedural error, but with the enactment and application of a zoning regulation which was specifically found to amount to a violation of part I, article 12 of our State Constitution. "It is a fundamental personal right which is involved here," *Metzger v. Town of Brentwood*, 117 N.H. 497, 502, 374 A.2d 954, 958 (1977), upon which there is no valid issue of conflict.

■ The plaintiff in this case should have enjoyed his constitutional right to the use of his property freely and without the need for judicial intervention. Because a citizen should not be compelled to bear the financial burden of judicial intervention to secure his clearly defined and established property right from an unconstitutional abuse of power found to constitute a taking, we hold that the plaintiff is entitled to reasonable attorney's fees and double costs. *Burrows v. City of Keene, supra* at 601, 432 A.2d at 22; *Harkeem v. Adams*, 117 N.H. 687, 691, 377 A.2d 617, 619 (1977).

*Reversed.*

All concurred.