Manchester District Court
No. 86-060

## THE STATE OF NEW HAMPSHIRE

v.

## BRIAN YEE, d/b/a YAN KING RESTAURANT

March 6, 1987

*Stephen E. Merrill*, attorney general (*Steven L. Winer*, assistant attorney general, on the brief and orally), for the State.

*Wadleigh, Starr, Peters, Dunn & Chiesa*, of Manchester (*Jeffrey H. Karlin* on the brief and orally), for the defendant.

PER CURIAM.  The defendant appeals a guilty finding by the Manchester District Court (*Capistran,* J.) and the imposition of a fine and penalty assessment for violation of Manchester ordinance section 16-3(b) (1985). He alleges that the ordinance is unconstitutionally vague and overbroad, that the district court erred in not admitting certain testimonial evidence and in basing a guilty finding upon insufficient evidence, and that the defendant was not a proper party to the action. We find the ordinance invalid. Therefore, we reverse the rulings of the district court and dismiss the complaint, without addressing the other issues.

Shortly after 11:00 p.m. on October 24, 1985, John Gariepy was in his backyard when he heard "excessive noise" emanating from the Yan King Restaurant, which is located about two-hundred-and-ten-feet from his property. The noise was being produced by a four-or-

five-piece band that was playing at the restaurant. Mr Gariepy noti-fied the Manchester police, and Officer David Pucharcz was dispatched to the scene. Officer Pucharcz met Gariepy in the back-yard and stayed for about ten minutes, during which time he heard a faint noise that sounded like a drum.

A complaint was filed against the defendant, charging him with violating Manchester ordinance section 16-3(b), as amended, which makes unlawful

"[t]he using, operating, or permitting to be played, used or operated of any radio, receiving set, musical instrument, phonograph, or other machine or device for the producing or reproducing of sound in such manner as to disturb the peace, quiet and comfort of the neighboring inhabitants or at any time with louder volume than is necessary for con-venient hearing for the person or persons who are in the room, vehicle or chamber in which such machine or device is operated and who are voluntary listeners thereto. The operation of any such set, instrument, phonograph, machine or device by a commercial establishment between the hours of 11:00 p.m. and 7:00 a.m. in such a manner as to be plainly audible outside of the physical limits of the building or structure in which it is located shall be prima facie evidence of a violation of this section."

The complaint was tried before the Manchester District Court on January 13, 1986. At the trial, Gariepy testified that he heard drums and vocal music at such a volume level that if he had been "up to date, [he] could [have] pick[ed] out the words, the music itself." William Yon, whose residence is about one-hundred-and-ninety to two-hundred feet from the Yan King, testified that he heard drums and music in his bedroom which caused him to go to his porch. From there, he could here the loud "beat of the drums."

Raymond Cote, John Gowan and Officer Fielding of the Manches-ter Police Department all testifed for the defendant. Mr. Cote testi-fied that he had gone to bed at about 8:00 p.m., and that he did not awaken, but that he normally is not awakened by music. Mr. Gowan testified that he did not hear any sounds from the Yan King Restau-rant while walking home from work at around 11:40 p.m. Officer Fielding, who was patrolling the area on the night of October 24, said that he did not hear any noise coming from the restaurant, though he had driven through the parking lot approximately every half hour. The defendant himself testifed that when he went outside the restaurant on the night of the 24th, he could hear the music "very faintly." On January 14, 1986, the court issued an order find-

ing the defendant guilty and imposing a $50 fine plus a penalty assessment. This appeal followed.

Chapter 16 of the Manchester Code is the City of Manchester's noise ordinance. The City's authority to enact such an ordinance derives from the State enabling statute, RSA 47:17, which provides in paragraph II that cities may make ordinances for the following purpose:

> "II. ORDER AND POLICE DUTY. To regulate the police of the city; to prevent any riot, noise, disturbance, or disorderly assemblages; to regulate the ringing of bells, blowing of horns or bugles, and crying goods and other things; and to prescribe the powers and duties of police officers and watchmen."

Hence, RSA 47:17, II empowers a municipality to enact reasonable laws to prevent unreasonable levels of noise which adversely affect the health and welfare of the community.

The preamble to chapter 16, set forth in section 16-1 entitled "Findings of Fact," clearly demonstrates that the City of Manchester enacted this ordinance to regulate "loud, unnecessary, unnatural or unusual noises which are prolonged, unusual and unnatural in their time, place, and use affect and are a detriment to public health, comfort, convenience, safety, welfare and prosperity of residents of the city." MANCHESTER CODE, § 16-1(b). Section 16-2(a) of the ordinance makes it unlawful "for any person to make, continue, or cause to be made or continued any loud, unnecessary or unusual noise or any noise which either annoys, disturbs, injures or endangers the comfort, repose, health, peace or safety of others, within the limits of the city."

Section 16-3 of the ordinance sets forth a number of specific acts "declared to be loud, disturbing and unnecessary noises in violation of [chapter 16]." The defendant was charged and found guilty of violating section 16-3(b). Prior to October 1, 1985, section 16-3(b) created the following violation:

> "(b) *Radios, phonographs, etc.* The using, operating or permitting to be played, used or operated of any radio receiving set, musical instrument, phonograph, or other machine or device for the producing or reproducing of sound in such manner as to disturb the peace, quiet and comfort of the neighboring inhabitants or any time with louder volume than is necessary for convenient hearing for the person or persons who are in the room, vehicle or chamber in which such machine or device is operated and who are voluntary listeners thereto. The operation of any

> such set, instrument, phonograph, machine or device between the hours of 11:00 p.m. and 7:00 a.m. in such a manner as to be *plainly audible at a distance of fifty (50) feet from the building,* structure or vehicle in which it is located shall be prima facie evidence of a violation of this section.

(Emphasis added.) On October 1, 1985, the board of mayor and aldermen passed a resolution amending section 16-3(b) by replacing the second sentence with the following sentence:

> "the operation of any such set, instrument, phonograph, machine or device by a commercial establishment between the hours of 11:00 p.m. and 7:00 a.m. in such a manner as to be *plainly audible outside of the physical limits of the building or structure* in which it is located shall be prima facie evidence of a violation of this section."

(Emphasis added.)

The statutory authority for the ordinance is RSA 47:17, II, set forth above. The context indicates that a municipality is empowered to prevent unreasonable noise and disturbance to people who are occupying property in which they have an interest or such other public or private premises as they may lawfully visit. There is no apparent objective to empower cities and towns to regulate sound that neither penetrates beyond the boundaries of the noisemaker's own premises nor constitutes an unreasonable disturbance to people lawfully on those premises.

The final sentence of the Manchester ordinance, however, would penalize the production of just such sound. Sound may be plainly audible outside the building in which it originates without carrying to premises in which someone other than the noisemaker has an interest, and sound may be plainly audible even within the noisemaker's premises without being unreasonably disturbing to people lawfully there. We therefore hold that enactment of the final sentence of the ordinance exceeded the city's delegated authority, and reverse any conviction that may have been obtained through the application of that *ultra vires* provision. *See Town of Tuftonboro v. Lakeside Colony, Inc.,* 119 N.H. 445, 448, 403 A.2d 410, 412 (1979).

*Reversed.*