# THE STATE OF NEW HAMPSHIRE

# SUPREME COURT

**In Case No. 2017-0120, <u>John W. Weeden & a. v. City of Rochester</u>, the court on June 4, 2018, issued the following order:**

Having considered the briefs and oral arguments of the parties, the court concludes that a formal written opinion is unnecessary in this case. The defendants, the City of Rochester and the City of Rochester Department of Building, Zoning and Licensing Services (City), appeal an order of the Superior Court (<u>Howard</u>, J.) awarding a declaratory judgment to John W. Weeden and Debra J. Weeden, d/b/a Amazon Park (the Weedens or Amazon Park). We affirm.

In July 2015, the City threatened legal action to stop the Weedens from permitting occupants to maintain permanent residency at Amazon Park, a year-round campground located in the City. The Weedens filed a petition seeking declaratory relief.

Following a three-day bench trial, the trial court found the following facts. Amazon Park is currently owned by the Weedens. It was previously owned and operated by John Weeden's father, Warren Weeden (Warren). Amazon Park has 95 trailer-occupied sites, each of which is fitted with a three-way hook-up to water, electric, and sewer. Trailers are rented on a month-to-month basis, generally without written leases, but occupants are normally permitted to stay as long as they wish so long as they pay rent and abide by park rules. Some tenants have stayed at Amazon Park for many years.

In 1976, Warren applied to the City planning board for approval to develop and operate Amazon Park as a campground for "three months during summer." In 1977, the planning board approved the plan "for a camping area" and placed no conditions on the type of unit allowed on the site. In 1981, Warren requested and received two special exceptions so he could add cabins at Amazon Park because "cabins would give the ability to have winter use of the facilities." According to the trial court, "[t]he approval clearly contemplated year round use, and did not expressly limit the duration of stay."

In 1983, the City's building inspector demanded that Warren stop advertising his facility as a year-round campground because Amazon Park had originally been approved "on the condition that [it was] open from Memorial Day to Labor Day only." The inspector also stated that Warren would need a variance to change the use of the property. Accordingly, even though Warren

believed Amazon Park was approved for year-long use because of the 1981 special exception, he applied for a variance to operate a year-round camping area. Warren's variance application was initially rejected by the zoning board of adjustment and the planning board. However, shortly thereafter, in 1984, the City issued a letter stating that it had "no further objection to the year-round use of the campground." In 1988 and 1991, the City code enforcement officer wrote letters to Weeden confirming that year-round use of the campground was permitted, but stating that the campground was to be used for "temporary occupancy" and "recreational purposes," not "as a permanent residence."

In 1991, the code enforcement officer wrote a memorandum to the city manager that stated: "Amazon Campground is currently operating on a year round basis. The Planning Board's approval limits people from living in the campground on a permanent basis, and from using an address within the park as a permanent residence." However, as the trial court found, "[d]espite the issue being expressly raised by City leaders, and being reflected in an internal memorandum, no action was taken against Amazon Park on this issue of permanent residency."

In 2013, the Weedens worked with the City and the State to have municipal water service extended to Amazon Park. The Weedens borrowed $261,000 to finance this project. As the trial court found, the City was aware that the Weedens would be responsible for the "extensive anticipated costs of the project," yet did not "question the legality of the use of the property." Instead, on a "Department Sign Off" checklist completed as part of the approval process, the City zoning division — when asked if there were "any concerns" with regard to "Use" requirements — checked "No." Further, the code enforcement department — when asked if there were any "particular concerns" regarding "[c]urrent Zoning or code violations" — wrote "None." The municipal water project was approved and the improvements were completed in 2014. The trial court observed that "[b]etween 1984, when the City represented to Warren Weeden that it had no objection to year-round use, and 2015, a period of over 30 years, the City did not seek to enjoin or enforce the nature of the Weedens' use of the property."

In July 2015, the City issued a written notice of violations and threatened legal action if the Weedens continued to unlawfully permit occupants to maintain permanent residency at Amazon Park. Shortly thereafter, the Weedens petitioned the court seeking declaratory relief. The trial court granted the Weedens' petition, finding that the doctrine of laches precludes the City from bringing an enforcement action. The trial court also found that (1) Amazon Park's existing use, although now non-conforming, is permitted under the original City approvals; (2) the City is estopped under the doctrine of municipal estoppel from asserting a claim that Amazon Park is approved for only seasonal, recreational use; and (3) RSA 216-I:1, VIII (c)

2

(2011) is not a statutory prohibition on the use of a recreational trailer as a permanent dwelling. The trial court concluded that "the City is barred from bringing an enforcement action to enjoin or terminate the Weedens' use of Amazon Park." This appeal followed.

The City raises many issues in its notice of appeal. Our decision on laches is dispositive of this appeal, and thus, we need not address the other issues raised by the City.

"Laches is an equitable doctrine that bars litigation when a potential plaintiff has slept on his rights." Thayer v. Town of Tilton, 151 N.H. 483, 485 (2004) (quotation omitted). Ascertaining whether the doctrine of laches applies is not a mere matter of time, but is principally a question of the inequity of permitting the claim to be enforced. Id. at 485-86.

The trial court has broad discretion in deciding whether the circumstances justify the application of the doctrine of laches. Miner v. A & C Tire Co., 146 N.H. 631, 633 (2001). It "may be appropriate where a suit has been unreasonably delayed and the delay has resulted in unfair prejudice." Id. "Unless we find that the trial court's decision is unsupported by the evidence or erroneous as a matter of law, we will not overturn it." Id.

The trial court properly identified and analyzed each of the four factors relevant to whether laches applies; namely: (1) the plaintiff's knowledge; (2) the defendant's conduct; (3) the interests to be vindicated; and (4) the resulting prejudice. See id. The trial court concluded that "there is not likely a more clear case for the application of laches."

With regard to the first two factors, the trial court found that the Weedens' use of the park had been "open and obvious." The court also found that the City had "been aware for decades of the occupants' use of Amazon Park as a residence . . . as far back as the early 1980's and 1990's," as evidenced by, among other things: rent payments from the City's welfare department to Amazon Park for indigent citizens; annual health, safety, and fire inspections conducted by the City on the property; and the fact that "many people at Amazon Park . . . registered their vehicles through, and paid taxes on their vehicles to the City for years." The trial court observed, "the City fully participated in and approved a several hundred thousand dollar water system improvement to Amazon Park in 2012 and 2013, with full knowledge of the nature of the occupancies at Amazon Park." The court noted that "[t]he City did absolutely nothing at that time to address the issue of permanent residency even though it had full knowledge of the facts," and reasoned that "[i]t would be . . . grossly inequitable to permit the City now to force an abrupt and radical change in the use of the property after it not only encouraged but expressly approved a major capital expenditure by the property owner."

3

With regard to the interests to be vindicated, the court concluded that "the public's interest in preventing the continued use of Amazon Park in the manner that it has operated for decades is ephemeral at best." Finally, with regard to the resulting prejudice, the court found:

> a radical and abrupt change in the decades-long use of the property, especially in light of the significant capital investment that the [Weedens] have made with the full knowledge, participation and approval of the City, would result in unacceptable and inequitable prejudice to the [Weedens].

Thus, the trial court concluded that "the City is barred from bringing any potential action or claim based on the use of the property."

As the appealing party, the City has the burden of demonstrating reversible error. Gallo v. Traina, 166 N.H. 737, 740 (2014). Based upon our review of the trial court's well-reasoned order, the City's challenges to it, the relevant law, and the record submitted on appeal, we conclude that the City has not demonstrated reversible error. See id.

Because the issue arose during briefing and argument, we observe that there is nothing in the trial court order that we are affirming that would preclude enforcement of fire and life safety codes. See Fischer v. N.H. State Bldg. Code Review Bd., 154 N.H. 585, 587 (2006). Notably, at oral argument, the Weedens' counsel acknowledged that "if there is a genuine issue of life safety with respect with any one of the units, [that issue] can be addressed through any number of departments at the City."

In light of our decision with respect to laches, we need not address the parties' remaining arguments.

Affirmed.

LYNN, C.J., and HICKS, BASSETT, and HANTZ MARCONI, JJ., concurred.

**Eileen Fox,**
**Clerk**

4