Strafford
No. 7097

TOWN OF DURHAM

v.

WHITE ENTERPRISES, INC.

SAME

v.

WALTER W. FISCHER & a.

November 28, 1975

*Boynton, Waldron, Dill & Aeschliman* and *Ralph R. Woodman, Jr., (Mr. Richard E. Dill* orally) for the town of Durham.

*William E. Galanes,* by brief and orally, for defendant White Enterprises, Inc.

*Cooper, Hall & Walker (Mr. Fred W. Hall, Jr.,* orally) for Walter W. and Mary I. Fischer.

LAMPRON, J. Bills in equity by the town of Durham against defendant White Enterprises and defendants Walter and Mary Fischer to enjoin them from renting or leasing their respective premises to groups of more than four unrelated persons in violation of its zoning ordinance as amended on March 9, 1971. Prior to a hearing thereon, the parties to both actions filed agreed statements of facts to enable the Trial Court *(Cann,* J.) to reserve and transfer five questions of law raised thereby. The main legal issues transferred are (1) whether the town can properly and constitutionally restrict the density of occupancy of premises by unrelated persons while not similarly restricting occupancy by persons related by blood, marriage or adoption; and (2) whether the defendants have acquired a nonconforming use from prior, noncontinuous rentals of premises to groups of unrelated persons in numbers in excess of density permitted by the present amended

ordinance.

White Enterprises acquired in 1963 the single family house in question located on the Dover Road in Durham. It was built many years prior to the enactment by the town in 1952 of its first zoning ordinance. This house, known as the former Phelps farm house, is now and has always been situated within the bounds of a Residence B District. It has qualified as a single family dwelling under the 1952 ordinance and all succeeding ones. Certain alterations have been made to the interior but none has affected its exterior size or habitable floor space. Since its acquisition, White Enterprises has regularly rented it to students on a seasonal or semester rental-lease basis. These were unrelated persons consisting of seven to ten individuals rather than a single family of related persons. Defendant intends to continue this practice. The house contains 1182 square feet of habitable floor space as defined by the ordinance. Durham, N.H., Zoning Ordinance § 1.40, at 5 (1971). This limits its maximum occupancy to four unrelated individuals because of the requirement that in such a case a maximum of 300 square feet of habitable floor space be provided for each occupant. *Id.* at 3.

Defendant Fischers own a real estate development in Durham consisting of nine duplex houses situated on both sides of Stony Brook Drive. They were built in the years 1967-69 and acquired by the defendants in 1970. These duplexes are located in a Residence A District and have been rented to private families and other persons including faculty and students of the University of New Hampshire. The university provides dormitory housing for less than half of the student enrollment on its main campus in Durham. The remaining students traditionally have been privately housed in and around Durham and surrounding towns.

Each of defendants' duplexes consists of two side-by-side separate dwelling units, each with basement and first and second stories. Each dwelling unit contains 1,196 square feet of habitable floor space exclusive of the basement. Under the terms of the 1971 amended ordinance the 1,196 square feet of habitable space limits each unit to occupancy by not more than four unrelated persons as it requires 300 square feet of space for each such occupant. Durham, N.H., Zoning Ordinance § 1.40, at 3, 5 (1971). Defendants have rented these dwelling units in the duplexes to three to six unrelated persons.

The defendants maintain that the town exceeded its authority under RSA 31:60-62 when the 1971 amendment to its zoning or-

dinance imposed varying density of occupancy standards on different classes of dwelling units. This density factor is expressed by a numeral representing the maximum number of occupants allowed in unrelated households per 300 square feet of habitable floor space. A single detached dwelling, a duplex, and a townhouse may have one person for each such 300 square feet; an apartment 1.5 persons for the same space; a boarding house two persons; and a dormitory is permitted three persons per 300 square feet of habitable space.

It is generally recognized that zoning regulations may be adopted for the purpose of preventing the overcrowding of land and insuring against undue concentration of population. *Euclid v. Ambler Co.*, 272 U.S. 365, 388 (1926); *Palo Alto Tenants Union v. Morgan*, 321 Fed. Supp. 908, 912 (N.D. Cal. 1970), *aff'd*, 487 F.2d 883 (9th Cir. 1973), *cert. denied*, 417 U.S. 910 (1974); *Planning & Zoning Comm'n v. Synanon Foundation, Inc.*, 153 Conn. 305, 310, 216 A.2d 442, 444 (1966); 1 R. Anderson, American Law of Zoning § 7.06 (1968). Furthermore RSA 31:60 specifically empowers towns and cities to regulate "the density of population" "for the purpose of promoting health, safety, morals, or the general welfare of the community." We conclude that the town of Durham was empowered to and could properly restrict the density of occupancy of premises by a zoning regulation.

A related issue is whether the town could constitutionally restrict the density of occupancy by unrelated persons while not restricting persons related by blood, marriage or adoption. Previous to the 1971 amendment, "Family" was defined in the town zoning ordinances as: "One or more persons living together in a dwelling as a single non-profit housekeeping unit . . . ." Durham, N.H., Zoning Ordinance § 1.40, at 5 (1969). As amended on March 9, 1971, this housekeeping unit or household was divided into two classes "a. *Family* — a number of persons living together and related by blood, marriage, or adoption. b. *Unrelated Household* — a number of unrelated persons living together provided that no such household shall have a number of members in excess of the figure provided in the table shown on the preceding page." Durham, N.H., Zoning Ordinance § 1.40, at 5 (1971).

We are dealing in this case with economic and social legislation and not with a fundamental interest or a suspect classification. *Village of Belle Terre v. Boraas*, 416 U.S. 1, 8 (1974). Consequently the test of constitutionality is whether the classification in the ordinance is reasonable and not arbitrary and bears a rational rela-

tionship to a permissible state objective. *Id.; Belkner v. Preston,* 115 N.H. 15, 18, 332 A.2d 168, 171 (1975). The widest discretion is usually allowed to the legislative judgment in determining the classes to be covered by the law and those to be excluded. *See McLaughlin v. Florida,* 379 U.S. 184, 191 (1964). The fact that unrelated group use does not constitute a different use than that by the blood related family group is not the question. The essence of zoning is selection and if it is not invidious or discriminatory against those not selected it is proper.

The issue resolves itself into whether the town, or any other governmental unit, has a legitimate interest in relieving the blood related family household from the density provisions of the ordinance. There is no doubt that the State has an interest in marriage and the welfare of the family members. This concern has been manifested in "countless statutes of bounty and protection with which the states, and all of them, and the Federal government alike aggressively surround the traditional family of parents and their children, reaching from family court laws, through laws of inheritance to tax laws." *Boraas v. Village of Belle Terre,* 367 F. Supp. 136, 146 (1972), *judgment aff'd,* 416 U.S. 1 (1974); *see Petition of Morin,* 95 N.H. 518, 520, 68 A.2d 668, 669-70, (1949); RSA 86:6 (Taxation of Legacies and Successions); Laws 1975, chs. 411, 487, 502 (dealing with abused, neglected and delinquent children).

If an unrelated household group exceeds the designated density requirement it is by voluntary action of the group. The blood related family by its natural growth may become in excess of the density limit. The State has no particular interest in keeping together a certain group of unrelated persons. The State has a clear interest, however, in preserving the integrity of the biological or legal family. The promotion of this legitimate government purpose justifies the exclusion of a blood related family from the density requirements of the ordinance which applies to an unrelated household. *Village of Belle Terre v. Boraas supra; Palo Alto Tenants Union v. Morgan, supra* at 912. Hence this classification is not invidious or arbitrary and is constitutional. *Johnson v. Robison,* 415 U.S. 361, 382-83 (1974); *see U.S. Dep't of Agriculture v. Moreno,* 413 U.S. 528, 533 (1973); *Granite State Grocers Ass'n v. State Liquor Comm'n,* 112 N.H. 62, 289 A.2d 399 (1972). It is to be noted that many blood related families by their natural composition will meet the density requirements placed on unrelated groups.

Prior to the 1971 amendment in question none of the Durham

zoning ordinances, dating back to 1952, had density of occupancy limitations or separated household units into blood-related family groups and unrelated persons living in a group. Section 1.23 of the ordinance as amended on March 9, 1971, contains the following provision: "Legal Nonconformity. This ordinance shall not apply to existing lawful structures nor to the existing lawful use of any building or land, which shall be considered as lawfully non-conforming structures or uses for so long as they are not changed. Lawful structures and uses shall be only such as were lawful non-conforming structures or uses under the terms of the Zoning Ordinance hereby repealed, or shall be otherwise lawfully existing at the time this ordinance was enacted."

When White Enterprises acquired its single family detached dwelling in 1963, the 1958 zoning ordinance was in effect. It defined such a dwelling as "a building and accessories thereto used or adapted as a dwelling by one Family." Durham, N.H., Zoning Ordinance § 200, at 6 (1958). Family was defined as: "One or more persons living together in a dwelling as a single non-profit housekeeping unit as distinguished from a group or fraternal organization occupying a hotel, club lodging or rooming house." *Id.* It is generally recognized that the term "family" when defined simply as a housekeeping unit is not limited to persons related by blood or marriage but includes also nonrelated groups. *Brady v. Superior Court,* 200 Cal. App. 2d 69, 77-82, 19 Cal. Rptr. 242, 247-49 (1962); *Neptune Park Ass'n v. Steinberg,* 138 Conn. 357, 362, 84 A.2d 687, 691 (1951); 1 R. Anderson, American Law of Zoning § 8.28 (1968). Furthermore the fact that the 1958 definition excluded specific groups usually made up of unrelated persons indicates that it was intended that a "family" could be made up of unrelated as well as blood related groups constituting a single housekeeping unit.

The White Enterprises dwelling met the lawful requirements of the zoning ordinance when it was acquired by the defendant in 1963. There being no density of occupancy limitation it could lawfully rent, as it did, to groups of unrelated persons totaling up to seven to ten individuals at any given time. It did so up to June 21, 1971, when this action was commenced and intends to continue to do so. The fact that these rentals were on a seasonal or seasonal or semester lease basis does not affect the lawfulness of the use. 58 Am. Jur. *Zoning* § 152 (1948); *see Morin v. Board of App.,* 352 Mass. 620, 227 N.E.2d 466 (1967); 1 R. Anderson, American Law of Zoning § 6.27 (1968). White Enterprises has acquired the right to continue its

prior use which existed on March 9, 1971, when the amendment in question was adopted. *New London v. Leskiewicz,* 110 N.H. 462, 467, 272 A.2d 856, 859 (1970); *Arsenault v. Keene,* 104 N.H. 356, 187 A.2d 60 (1962).

Defendants Fischer acquired their nine duplex houses in 1970. They are all located in a Residence A District under the 1969 zoning ordinance then in effect. Being two-family dwellings they could be used as a dwelling by two families. Durham, N.H., Zoning Ordinance § 1.40, at 3 (1969). A family was defined as: "One or more persons living together in a dwelling as a single non-profit housekeeping unit . . . ." *Id.* The ordinance imposed no density of occupancy requirements. When the 1971 amendment was adopted defendants were renting these units to private families as well as to unrelated groups varying from three to six individuals, including faculty and students at the university. This was a lawful use under the ordinance. They have continued to advertise for rent, and to rent a one-half duplex unit to such groups. The Fischers have acquired the right to continue this nonconforming use under the ordinance as amended in 1971.

The answer to transferred questions No. 1 and 2 is "Yes", the town of Durham could properly and constitutionally regulate the density of occupancy of premises by unrelated persons, while not similarly restricting occupancy by persons related by blood, marriage or adoption.

The answer to question No. 3 is "Yes", on the agreed statement of facts transferred to this court the defendants White Enterprises and Fischers have acquired a right to continue the nonconforming uses they were engaged in on March 9, 1971 when the amendment to the zoning ordinance was adopted.

The answer to questions No. 4 and 5 is "No", neither White Enterprises nor the Fischers can be permanently enjoined from renting or leasing their premises in question to groups of more than four unrelated persons which would limit their nonconforming uses existing at the adoption of 1971 amendments to the zoning ordinance.

*Remanded.*

KENISON, C.J., and GRIMES, J., did not sit; the others concurred.