CHARTER TOWNSHIP OF DELTA v DINOLFO

Docket No. 67485. Argued October 4, 1983 (Calendar No. 5).—Decided
July 19, 1984.

The Charter Township of Delta brought separate actions in the
Eaton Circuit Court against Paul C. Dinolfo and Marsha Lynn
Dinolfo and against John F. Sierawski and Nancy Sierawski,
members of The Work of Christ Community, seeking to enjoin
the defendants from maintaining households in an area zoned
for single-family residences which did not conform with the
definition of "family" in the township zoning ordinance. The
court, Richard E. Robinson, J., granted the plaintiff's motion
for summary judgment. The Court of Appeals, Cynar, P.J., and
J. H. Gillis and Allen, JJ., affirmed (Docket No. 52162). The
defendants appeal.

In an opinion by Justice Brickley, joined by Justices Kav-
anagh, Levin, Ryan, and Cavanagh, the Supreme Court *held:*

The zoning ordinance of Delta Township that limits the
occupation of a single-family residence to an individual or a
group of two or more persons related by blood, marriage, or
adoption and not more than one other unrelated person is
unreasonable and arbitrary and violates the Due Process
Clause of the Michigan Constitution.

1. A township has the power to regulate, by zoning ordi-
nance, the use of land and structures within its boundaries for
the public health, safety, and welfare, including control of the
density of population. Consistent with the power is defining

REFERENCES FOR POINTS IN HEADNOTES

[1, 3] 82 Am Jur 2d, Zoning and Planning § 110.
What constitutes a "family" within meaning of zoning regulation or
restrictive covenant. 71 ALR3d 693.
Supreme Court's views as to constitutionality of residential zoning
restrictions. 52 L Ed 2d 863.
Validity of ordinance restricting number of unrelated persons who
can live together in residential zone. 12 ALR4th 238.
[2] 82 Am Jur 2d, Zoning and Planning §§ 108-110.
[3] 82 Am Jur 2d, Zoning and Planning § 15.
[4] 82 Am Jur 2d, Zoning and Planning § 15.
[5] 82 Am Jur 2d, Zoning and Planning § 354.

such words as "family" within ordinances. A township may consider legal or other relationships among persons in arriving at a definition of family.

2. Under the Constitution of the United States, it is permissible to limit occupation of residential property to a traditional, biological family and a number of unrelated persons. In this case, the ordinance is constitutional as a matter of federal law. However, under the Michigan Constitution, the ordinance, which speaks not to contending land uses but to who may occupy a residential dwelling, is not reasonably related to the achievement of the goals of preserving traditional family values, maintenance of property values, and population and density control. The appropriate standard to evaluate a state's exercise of the police power is the due process standard. In this case, the ordinance indiscriminately regulates where no regulation is needed and fails to regulate where regulation is most needed. The ordinance assumes that unrelated persons will manifest behavior different from a traditional family without offering support for the assumption. The number of unrelated persons who may occupy a residence is limited to as few as two while related persons may occupy a residence without limit. In the absence of a reasonable relation to the stated goals, the ordinance can only be termed arbitrary and capricious under the Due Process Clause of the Michigan Constitution.

Reversed.

Chief Justice Williams, joined by Justice Boyle, dissented. The zoning ordinance does not violate the defendants' due process rights as guaranteed by the state constitution. To successfully challenge a zoning ordinance, a plaintiff must prove that there is no reasonable governmental interest advanced by the zoning classification and that the ordinance is unreasonable because of purely arbitrary, capricious, and unfounded exclusion of other types of legitimate land use from the area in question. In this case, because the dispute concerns occupants of land rather than competing uses, the opinion of the Court applies a "rational relationship" standard which has generally been employed in non-zoning matters. Regardless of whether an ordinance is viewed as a regulation of land uses or occupants of land, the principles articulated in well established zoning precedents are applicable and should not be so hastily discarded. Zoning matters are essentially legislative, not judicial, functions, and it is not for courts to interfere with the legislative function of local zoning authorities absent a showing that an ordinance arbitrarily and capriciously restricts land use

and serves no governmental interest. It is clearly within the state's police power to zone and regulate land use in the promotion and preservation of the traditional family lifestyle. The maintenance of a traditional family environment has been held in other states to be a reasonable basis for excluding land uses that may impair the stability of the environment or erode values associated with a traditional family style of life. In this case the defendants failed to sustain their burden of proof so as to rebut the ordinance's presumption of validity. It is not enough that they presented evidence that raised a debatable question as to the reasonableness of the ordinance. The defendants were required to present sufficient evidence to prove that there is no room for a fair and legitimate difference of opinion that the classification drawn is an unreasonable exercise of the township's police power, and they failed to do so.

106 Mich App 1; 308 NW2d 437 (1981) reversed.

OPINION OF THE COURT

1. ZONING — MUNICIPAL CORPORATIONS — LAND USE — DUE PROCESS.

A township zoning ordinance that limited the occupation of a single-family residence to an individual or a group of two or more persons related by blood, marriage, or adoption and not more than one other unrelated person was unreasonable and arbitrary and violated the Due Process Clause of the Michigan Constitution (Const 1963, art 1, § 17).

2. ZONING — MUNICIPAL CORPORATIONS — LAND USE — DEFINITIONS.

A township has the power to regulate, by zoning ordinance, the use of land and structures within its boundaries for the public health, safety, and welfare, including control of the density of population; consistent with the power is defining such words as "family" within ordinances; a township may consider legal or other relationships among persons in arriving at a definition of family (Const 1963, art 7, § 34; MCL 125.271; MSA 5.2963[1]).

DISSENTING OPINION BY WILLIAMS, C.J.

3. ZONING — MUNICIPAL CORPORATIONS — DUE PROCESS — LAND USE.

*To successfully challenge a zoning ordinance on constitutional grounds, a plaintiff must prove that there is no reasonable governmental interest advanced by the zoning classification and that the ordinance is unreasonable because of purely arbitrary, capricious, and unfounded exclusion of other types of legitimate land use from the land in question (Const 1963, art 1, § 17).*

4. Zoning — Municipal Corporations — Due Process — Judicial
   Construction.

   *Zoning ordinances are presumed to be constitutional and are
   required to be liberally construed; zoning matters are essen-
   tially legislative and not judicial functions, and it is not for
   courts to interfere with the legislative function of local zoning
   authorities absent a showing that an ordinance arbitrarily and
   capriciously restricts land use and serves no governmental
   interest (Const 1963, art 1, § 17).*

5. Zoning — Municipal Corporations — Due Process — Burden of
   Proof.

   *Evidence that raised a debatable question whether a township
   zoning ordinance that sought to maintain a traditional family
   environment by limiting use of certain real property primarily
   to persons related by blood, marriage, or adoption was unrea-
   sonable was not sufficient to rebut the presumption of the
   ordinance's validity; sufficient evidence that there was no room
   for a fair and legitimate difference of opinion that the classifi-
   cation was an unreasonable exercise of the township's police
   power was required (Const 1963, art 1, § 17).*

*McKay, Murphy & Guerre, P.C.* (by *Vincent P.
Spagnuolo* and *Thomas R. Meagher),* for the plain-
tiff.

*Foster, Meade, Magill & Rumsey* (by *Robert F.
Magill, Jr.,* and *Katherine E. Ward)* for the defen-
dant.

Amici Curiae:

*Larry Betz* for Robert Beard.

*Bauckham, Reed, Lang, Schaefer & Travis* (by
*Robert F. Travis)* for Michigan Townships Associa-
tion.

BRICKLEY, J. This case requires us to consider
the constitutionality of a township zoning ordi-
nance which limits the occupation of single-family

residences to an individual, or a group of two or more persons related by blood, marriage, or adoption, and not more than one other unrelated person. We conclude that this ordinance, which prohibits the defendants from including in their households six unrelated persons, is unreasonable and arbitrary and, accordingly, in violation of the Due Process Clause of the Michigan Constitution.

In July and September of 1977, the Sierawski and Dinolfo "families" moved into homes in plaintiff township. The defendants' homes are located in an R 3, Moderate Density Residential District, which allows for single-family dwellings, duplexes, and quadruplexes. The defendants' homes qualify only as single-family dwellings. Each household consists of a husband and wife, that couple's several children, and six unrelated single adults. All members of these households are members of The Work of Christ Community, a nonprofit and federally tax-exempt organization chartered by the State of Michigan. Each of these households functions as a family in a single housekeeping unit and members intend to reside in their respective households permanently. All of the members of these "families" have adopted their lifestyle as a means of living out the Christian commitment that they stress is an important part of their lives.

Over a year after defendants occupied these residences with their "families", plaintiff's planning department sent violation notices citing them for having more than one unrelated individual residing in their homes in violation of the plaintiff's zoning ordinance. Plaintiff's zoning ordinance limits those groups which can live in single-family dwellings to an individual, or a group of two or more persons related by blood, adoption, or marriage, and not more than one unrelated person,

excluding servants.[1] It is undisputed that the space
requirements of the township building ordinance
were not violated by the number of persons in
each of the defendant's households. Indeed, that
ordinance would allow for three more persons to
live in homes the size of those owned by defen-
dants.

Defendants jointly filed an application for a
variance from the family definition section of the
plaintiff's zoning ordinance, which was denied by
the Zoning Board of Appeals. The minutes of the
meeting at which the application was considered
reflect no complaints about the defendants or the
members of their households by any of their neigh-
bors who attended that meeting. To the contrary,
all present found them to be good neighbors. The
variance was denied by the board because the
defendants did not fall under the four general
outlines for the granting of variances in the zoning
ordinance.

Defendant Dinolfo then petitioned the Board of
Trustees of Delta Township to overrule the deci-
sion of the Zoning Board of Appeals, and also
formally presented a petition, supported by the
signatures of twenty-seven neighbors, for a change
in the language of the family definition section of
the ordinance. Both of these efforts were unsuc-
cessful. Plaintiff set a deadline for defendants to
bring their households into compliance with the
ordinance definition of a family.

After that time had expired, plaintiff filed sepa-
rate complaints for injunctive relief against defen-

[1] Delta Township zoning ordinance, § 2.2.0(28) provides:

"*Family:* An individual or a group of two or more persons related
by blood, marriage, or adoption, including foster children and ser-
vants, together with not more than one additional person not related
by blood, marriage, or adoption, living together as a single housekeep-
ing unit in a dwelling unit."

dants in Eaton Circuit Court. The complaints were consolidated on order of the circuit court upon stipulation of counsel.

The trial court ultimately ruled in favor of the plaintiff on cross-motions for summary judgment under GCR 1963, 117.2(3). It found that plaintiff had the power under the Township Rural Zoning Act, MCL 125.271 *et seq.;* MSA 5.2963(1) *et seq.,* to define the word "family", that its definition was reasonable, and that the governmental effort to promote the traditional notion of a family was a legitimate exercise of its authority. The court justified the allowance of one unrelated adult in a household as a way to allow for some flexibility. The court relied on *Village of Belle Terre v Boraas,* 416 US 1; 94 S Ct 1536; 39 L Ed 2d 797 (1974), to state that simply because the Legislature drew the line at one unrelated adult did not mean the ordinance was arbitrary. The court also found that defendants' intended land use was not entirely excluded from the township by the ordinance in violation of MCL 125.297a; MSA 5.2963(27a), since they could still request conditional use permits. The court entered an order permanently enjoining defendants from occupying their residences in violation of the ordinance.

The Court of Appeals affirmed, 106 Mich App 1, 3; 308 NW2d 437 (1981), and this Court granted defendants' application for leave to appeal. 417 Mich 887 (1983).

The defendants argue here, as below, that the plaintiff has no authority to define the word family and that the word "family", as it appears in the Township Rural Zoning Act, is intended to be interpreted as referring to a functional family rather than a traditional biological family. Defendants contend that they constitute functional fami-

lies within that broad definition. Defendants also argue that the net effect of plaintiff's enforcement of this ordinance is to totally exclude them from the township in violation of their constitutional rights and their rights under MCL 125.297a; MSA 5.2963(27a). Defendants further contend that the definition of family in the ordinance both prohibits and allows property uses in an unreasonable, arbitrary, and capricious manner in violation of the Due Process and Equal Protection Clauses of the United States and Michigan Constitutions. Finally, defendants argue that the ordinance, by interfering with their chosen lifestyle and religious needs, is an impairment of their fundamental rights of privacy, association, and free exercise of religion in violation of the United States and Michigan Constitutions.

I

We first consider whether plaintiff had the power to define a family at all. The Township Rural Zoning Act is, on its face, a broad grant of power,[2] providing in part:

"The township board of an organized township in this state may provide by zoning ordinance for the regulation of land development and the establishment of districts in the portions of the township outside the limits of cities and villages which regulate the use of

---

[2] In the absence of state enabling legislation, a political subdivision has no power to zone. *People v Armstrong,* 73 Mich 288; 41 NW 275 (1889); *Detroit Osteopathic Hospital v Southfield,* 377 Mich 128; 139 NW2d 728 (1966). Once the power has been granted to a political subdivision, however, it should not be artificially limited. Const 1963, art 7, § 34 provides:

"The provisions of this constitution and law concerning counties, townships, cities and villages shall be liberally construed in their favor. Powers granted to counties and townships by this constitution and by law shall include those fairly implied and not prohibited by this constitution."

land and structures; to meet the needs of the state's citizens for food, fiber, energy, and other natural resources, places of residence, recreation, industry, trade, service, and other uses of land; *to insure that use of the land shall be situated in appropriate locations and relationships; to limit the inappropriate overcrowding of land and congestion of population, transportation systems, and other public facilities* * * *. Ordinances regulating land development may also be adopted designating or limiting the location, the height, number of stories, and size of dwellings, buildings, and structures that may be erected or altered, including tents and trailer coaches, and the specific uses for which dwellings, buildings, and structures, including tents and trailer coaches, may be erected or altered; the area of yards, courts, and other open spaces, and the sanitary, safety, and protective measures that shall be required for the dwellings, buildings, and structures, including tents and trailer coaches; *and the maximum number of families which may be housed in buildings,* dwellings, and structures, including tents and trailer coaches, erected or altered." (Emphasis added.) MCL 125.271; MSA 5.2963(1).

As stated above, the defendants urge that the word "family" in the statute should be interpreted broadly to include a group functioning as a family. They urge that the words of the statute, "to limit the inappropriate overcrowding of land and congestion of population, transportation systems, and other public facilities" and the grant of power to regulate the "maximum number of families" in structures relate to only the number of groups, not the composition of those groups. In support of this position, the defendants cite the definition of "family" which was contained in § 12202 of the Public Health Code, MCL 333.1101 *et seq.;* MSA 14.15(1101) *et seq.,* and decisions of this Court interpreting "family", in the context of an insurance policy, *Carmichael v Northwestern Mutual*

*Benefit Ass'n,* 51 Mich 494; 16 NW 871 (1883), and in a restrictive covenant, *Boston-Edison Protective Ass'n v Paulist Fathers, Inc,* 306 Mich 253; 10 NW2d 847 (1943), all of which, defendants contend, support a broad reading of the word "family". Nevertheless, we find each of these examples inapposite to the meaning of the word "family" in the Township Rural Zoning Act.[3]

---

[3] Section 12202 of the Public Health Code defined a family as "1 or more individuals living together and sharing common living, sleeping, cooking, and eating facilities". MCL 333.12202; MSA 14.15(12202), repealed by 1980 PA 431. While defendants' families certainly fall within this definition, the definition is of little use in determining the intent of the Legislature when enacting the Township Rural Zoning Act. The Public Health Code was enacted in 1978. The Township Rural Zoning Act was enacted in 1943. At the time of the enactment of the Township Rural Zoning Act provisions comparable to those found in § 12202 of the Public Health Code did not specifically define a "family". See 1939 PA 303, § 2. Also, § 2(3a) of 1939 PA 303 appears to equate the phrase "immediate family" with a "family", suggesting that, at least in 1939, the Legislature was not defining the family expansively.

In *Carmichael,* the plaintiff sought to recover benefits from the mutual benefit association which had insured the decedent's life. Plaintiff was named beneficiary of the decedent. The act which authorized the creation of mutual benefit associations provided "[t]hat any number of persons, not less than five, may become a body corporate and politic, for the purpose of securing to the families or heirs of any member, upon his death, a certain sum of money". 1871 CL 2829. Plaintiff, who had lived with the deceased as his daughter for many years, was denied benefits by the association on the grounds that she was neither an heir nor a family member. This Court, however, held that the plaintiff was indeed a member of the decedent's family, noting that depending on the context, the word family can mean many things. The Court refused to narrowly construe the word family when to do so "would cause injustice". *Carmichael,* p 496. Of course, the word family in the Township Rural Zoning Act is not in the midst of a statute which authorizes the existence of associations to provide death benefits. The policy behind the expansive definition of family in *Carmichael* is not present in the instant case.

In *Boston-Edison Protective Ass'n v Paulist Fathers, Inc, supra,* decided five months after the enactment of the Township Rural Zoning Act, the issue was not what constituted a family, but rather, whether a restrictive covenant which limited the use of a building to that of a "single dwelling house" precluded its use by a group of priests. Because the plaintiff in the case relied on a dictum in *Nerrerter v Little,* 258 Mich 462; 243 NW 25 (1932), to the effect that a covenant limiting construction on land to a single dwelling house allowed the building of only a single dwelling designed to be used by

The Township Rural Zoning Act is a broad grant of authority to townships to zone for the "public health, safety, and welfare". Included within this broad grant is the power to zone for the purpose of density control. We do not suggest that the act delegates to townships the unfettered authority to define the term family because any definition by a political subdivision must be within the intendment of the Legislature. We do find, however, that the definition of "family" in the ordinance is consistent with the enabling legislation.

At the time of the adoption of the Township Rural Zoning Act the traditional family was the most prevalent living pattern. The literal meaning of the word "family", particularly in the context of a statute dealing with living arrangements, could lead to the conclusion that the Legislature was considering only the existence of the biological family. Such an interpretation, however, would leave a void in the act, allowing townships to consider only traditional families in their zoning ordinances, legislatively precluding an individual living alone or a family from ever having an unrelated person in the household. On the other hand, to interpret "family" as being so fluid that each homeowner could define his own family would preclude townships from giving any consideration to the composition of a household. We do not think the Legislature intended either result. Nothing in the act precludes a township from considering the legal relationships between persons and nothing in the act forbids considering other kinds of relationships.

one family, the *Boston-Edison* Court, also in dicta, embarked on a discussion of the meaning of family, relying heavily on *Carmichael*. Although *Boston-Edison* may stand for the meaning of "single dwelling house" as used in a restrictive covenant, it does not give us the meaning of the word "family" when used by the Legislature.

The grant by the Legislature of the power to "designat[e] * * * the maximum number of families" presumes the power to consider the internal composition of a group. The word "family" presumes the power to consider the legal relationships of group members, as well as other relationships. We take notice that ordinances such as the one involved here have long existed without any adverse legislative reaction. As there is no indication of any legislative intent to preclude a township's consideration of the legal relationships of group members, we must conclude that the enactment of the present ordinance was within the power granted to plaintiff by the Legislature. We must next consider if the result of this grant of power—plaintiff's ordinance—is constitutional.[4]

[4] Defendants also contend that plaintiff's ordinance acted to totally exclude their proposed land use from the community in violation of MCL 125.297a; MSA 5.2963(27a), which provides:

"A zoning ordinance or zoning decision shall not have the effect of totally prohibiting the establishment of a land use within a township in the presence of a demonstrated need for that land use within either the township or surrounding area within the state, unless there is no location within the township where the use may be appropriately located, or the use is unlawful".

The Court of Appeals affirmed the trial court's grant of summary judgment under GCR 1963, 117.2(3) in favor of plaintiff on this issue, holding that because defendants had failed to apply for a conditional use permit under plaintiff's ordinance, defendants had failed to show a factual prerequisite for a claim under the statute. We express no opinion on the correctness of that reasoning.

Defendants' affirmative defense under the statute is that the ordinance totally precludes non-traditional families from living in Delta Township. Therefore, defendants contend, the ordinance is void as to their land use and they are free to establish it where they choose. Although we do not decide the issue, we note that such reasoning is open to question in light of *Ed Zaagman, Inc v City of Kentwood,* 406 Mich 137; 277 NW2d 475 (1979). Defendants have made no showing that there is a location in the township where their use may be appropriately located, as is required by the statute, except to argue that their present location is appropriate because the distinction between traditional families and their non-traditional families is irrational. Thus, although it is always preferable to decide a case on statutory, rather than on constitutional grounds, if possible, defendants' argument under the statute forces the constitutional issue.

## II

In *Village of Euclid v Ambler Realty Co,* 272 US 365, 395; 47 S Ct 114; 71 L Ed 303 (1926), the landmark zoning case, the Supreme Court first upheld the constitutionality of a zoning ordinance as a valid exercise of the state's police power. The standard used was whether the regulation was "clearly arbitrary and unreasonable, having no substantial relation to the public health, safety, morals, or general welfare". The Court recognized, however, that a zoning law may be constitutional on its face, while aspects of it could be invalid as it applies to a specific property owner.

Nearly fifty years later, in *Village of Belle Terre v Boraas,* 416 US 1; 94 S Ct 1536; 39 L Ed 2d 797 (1974), the Supreme Court confronted the constitutionality of a local zoning ordinance that is in all significant respects identical to the ordinance in question here. The Village of Belle Terre ordinance limited residential occupancy to a biological family plus no more than two unrelated persons. The case arose when the house in question was leased to eight college students. In upholding the constitutionality of the ordinance, Justice Douglas, writing for the majority, held that there were no fundamental rights involved which would require a scrutiny higher than determining if the ordinance was arbitrary. The Court found that distinguishing between a biological family and an unrelated group was not unreasonable or arbitrary under the Due Process and Equal Protection

---

If one assumes that there is a rational reason for separating families from non-families, then defendants would still have to show that there is a place in the township appropriate for their land use. Since they have not done so, their argument under the statute must fail. We must, therefore, address the assumption that there is a rational difference between such groups. That is a constitutional issue, whether addressed in terms of the statute or otherwise.

Clauses of the United States Constitution. It was argued in *Belle Terre*, p 8, as it is here, that "if two unmarried people can constitute a 'family' there is no reason why three or four may not". To that argument the Supreme Court responded "[b]ut every line drawn by a legislature leaves some out that might well have been included. That exercise of discretion, however, is a legislative, not a judicial, function."

The defendants here argue for a distinction between their case and *Belle Terre* because *Belle Terre* dealt with the commercialization of residential property and transient students, rather than as here a permanent functional family structured around a nuclear family. While the analysis of *Belle Terre* is somewhat sketchy, its conclusion is not.[5] The Supreme Court stated that the ordinance was not "aimed at transients", involved "no procedural disparity inflicted on some but not on others", and implicated "no 'fundamental' right guaranteed by the Constitution, such as voting". Thus, we find *Belle Terre* to be clear authority for the proposition that to limit residentially zoned property to a traditional family and a number of non-related persons is permissible under the United States Constitution.

Our conclusion is not altered by *Moore v East Cleveland*, 431 US 494; 97 S Ct 1932; 52 L Ed 2d 531 (1977), notwithstanding defendants' contention that *Moore* modifies *Belle Terre*. In *Moore*, the Court held unconstitutional an ordinance which allowed only nuclear families to reside in single-

---

[5] The reasoning of *Belle Terre* has been widely criticized by commentators. See, *e.g.*, Williams & Doughty, *Studies in Legal Realism: Mount Laurel, Belle Terre & Berman*, 29 Rutgers L Rev 73, 76-82 (1975); Hartman, *Village of Belle Terre v Boraas: Belle Terre Is a Nice Place to Visit—But Only "Families" May Live There*, 8 Urban L Ann 193 (1974).

family dwellings. On the facts of the case, the ordinance prohibited a grandchild from living with his grandmother. The Supreme Court came to a quick and strong defense of the traditional extended family, stating:

"Ours is by no means a tradition limited to respect for the bonds uniting the members of the nuclear family. The tradition of uncles, aunts, cousins, and especially grandparents sharing a household along with parents and children has roots equally venerable and equally deserving of constitutional recognition. Over the years millions of our citizens have grown up in just such an environment, and most, surely, have profited from it. Even if conditions of modern society have brought about a decline in extended family households, they have not erased the accumulated wisdom of civilization, gained over the centuries and honored throughout our history, that supports a large conception of the family. Out of choice, necessity, or a sense of family responsibility, it has been common for close relatives to draw together and participate in the duties and the satisfactions of a common home." *Id.,* pp 504-505.

We view *Moore* not as a limitation of *Belle Terre,* but, instead, as dealing with the other side of the *Belle Terre* coin—that while the state can restrict residential occupancy to the family, it cannot dissect the family. Having so found, we, therefore, must conclude that plaintiff's ordinance is constitutional as a matter of federal law. We must then accept the defendants' challenge that we examine the Delta Township ordinance in light of Michigan's Constitution.

The constitutionality of zoning in Michigan is well established. See *Austin v Older,* 283 Mich 667; 278 NW 727 (1938). In traditional zoning matters, where the issue is whether a certain parcel of land is zoned reasonably, as compared to

another possible zoning classification, the following
principles are applicable:

"The important principles require that for an ordi-
nance to be successfully challenged plaintiffs prove:
" '[F]irst, that there is no reasonable governmental
interest being advanced by the present zoning classifica-
tion itself * * * or
" '[S]econdly, that an ordinance may be unreasonable
because of the purely arbitrary, capricious and un-
founded exclusion of other types of legitimate land use
from the area in question.' [Kropf v Sterling Heights,]
391 Mich 139, 158[; 215 NW2d 179 (1974)].

"The four rules for applying these principles were
also outlined in Kropf. They are:
"1. ' "[T]he ordinance comes to us clothed with every
presumption of validity." ' 391 Mich 139, 162, quoting
from Brae Burn, Inc v Bloomfield Hills, 350 Mich 425;
86 NW2d 166 (1957).
"2. ' "[I]t is the burden of the party attacking to prove
affirmatively that the ordinance is an arbitrary and
unreasonable restriction upon the owner's use of his
property * * *. It must appear that the clause attacked
is an arbitrary fiat, a whimsical ipse dixit, and that
there is no room for a legitimate difference of opinion
concerning its reasonableness." ' 391 Mich 139, 162
quoting Brae Burn, Inc.
"3. 'Michigan has adopted the view that to sustain an
attack on a zoning ordinance, an aggrieved property
owner must show that if the ordinance is enforced the
consequent restrictions on his property preclude its use
for any purposes to which it is reasonably adapted.' 391
Mich 139, 162-163.
"4. ' "This Court, however, is inclined to give consid-
erable weight to the findings of the trial judge in equity
cases." ' 391 Mich 139, 163, quoting Christine Building
Co v City of Troy, 367 Mich 508, 518; 116 NW2d 816
(1962)." Kirk v Tyrone Twp, 398 Mich 429, 439-440; 247
NW2d 848 (1976).

The dispute at bar is not between contending

land uses, such as between single dwelling and multiple dwelling uses or between residential and commercial uses. In those kinds of disputes we are dealing with a local government's line drawing between such uses. While the decision to zone a community is a reasonable exercise of the police power, it is recognized that the actual line drawn between uses is often, by its nature, arbitrary. Hence, the above-cited test is weighted to recognize and defer to the planning expertise in the difficult task of zoning. The debate in the present case, however, while undoubtedly involving zoning, is not such a traditional zoning conflict.

The dispute here is not between contending land uses, but about who can occupy a residential dwelling. In evaluating the relative merits and effects of mixing related and non-related persons in a single-family dwelling, planning expertise becomes more questionable and human experience and values more paramount. Thus, our task here is not to evaluate the reasonableness of the township's designation of one land use as opposed to another, but, rather, to evaluate whether the existence of the distinction made is permissible.

We think the appropriate standard, which does not conflict with that described above, is that due process standard generally used to evaluate the normal use of the police power. Of course, we still presume the constitutionality of the ordinance. But, extraordinary deference given to the line drawing in traditional zoning matters is not appropriate here.

Even plaintiff urges our consideration of, and we find appropriate, the standard laid down in a non-zoning matter, *Manistee Bank & Trust Co v McGowan,* 394 Mich 655, 671; 232 NW2d 636 (1975), in which, after reviewing a number of different

due process and equal protection standards, Justice LEVIN wrote:

" 'the governing rule is one of reason: The Equal Protection Clause, like the Due Process Clause, is a guaranty that controls the reasonableness of governmental action.' The classification must be a reasonable one, and it must bear a reasonable relation to the object of the legislation."

In a case similar to the present one, the New Jersey Supreme Court used the same standard:

"It is elementary that substantive due process demands that zoning regulations, like all police power legislation, must be reasonably exercised—the regulation must not be unreasonable, arbitrary or capricious, the means selected must have a real and substantial relation to the object sought to be attained, and the regulation or proscription must be reasonably calculated to meet the evil and not exceed the public need or substantially affect uses which do not partake of the offensive character of those which caused the problem sought to be ameliorated." *Kirsch Holding Co v Borough of Manasquan,* 59 NJ 241, 251; 281 A2d 513 (1971).

Plaintiff lists the objectives of this ordinance: preservation of traditional family values, maintenance of property values and population and density control.[6] We cannot disagree that those are

---

[6] We note with interest that neither the Legislature in the enabling legislation nor the township in its zoning ordinance make any mention of the goal of "preserving traditional family values". The Township Rural Zoning Act lists as the statute's goals:

"to ensure that the use of the land shall be situated in appropriate locations and relationships; to limit the inappropriate overcrowding of land and congestion of population, transportation systems, and other public facilities". MCL 125.271; MSA 5.2963(1).

The Delta Township ordinance cites as its purposes:

"1) Promoting and protecting the public health, safety, and general

not only rational but laudable goals. Where the difficulty arises, however, is when plaintiff attempts to convince us that the classification at hand—limiting to two the number of unrelated persons who may occupy a residential dwelling together or with a biological family—is reasonably related to the achievement of those goals. It is precisely this rational relationship between the means used to achieve the legislative goals that must exist in order for this deprivation of the defendants' use of their property to pass the due process test.

Running through plaintiff's arguments is the assumption that unrelated persons will manifest a behavior pattern different from the biological family. They see

"the potential for occupancy by one 'nuclear family' together with any number of unrelated and *unruly* individuals who view regular late night parties as a common bond and a proper function of child rearing."

If defendants succeed here, plaintiff fears that the next group taking advantage of the opportunity might not be of defendants' character. Plaintiff suggests that the "common bond of the group * * * [might be] not the Work of Christ, but the Work of Satan".

Amicus curiae, Michigan Townships Association, is even more direct in its perception of the evils

welfare; 2) Protecting the character and stability of the recreational, agricultural, residential, commercial, and industrial areas within the unincorporated portions of Delta Charter Township; 3) Regulating growth of Delta Charter Township to obtain orderly and beneficial development; 4) Preventing the overcrowding of land and undue concentration of buildings and structures so far as is possible and appropriate in each zoning district by regulating the use and size of buildings in relation to the land surrounding them; 5) Pursue all township responsibilities set forth in [the enabling legislation]."

that will result if non-related persons are allowed
to live as a functional family.

"The purpose of such regulations is to prohibit the
influx of informal residential groups of people whose
primary inclination is toward the enjoyment of a licen-
tious style of living.

"While it seems apparent that defendants are not of
this character, it would seem equally apparent that
allowing in excess of six unrelated individuals to occupy
a single-family dwelling unit would allow college frater-
nities, 'hippie' communes, motorcycle clubs, and as-
sorted loosely structured groups of people associating
for the purpose of enjoying a purely licentious style of
living to locate at will in settled, low density residential
neighborhoods and, perhaps even worse in duplexes,
quadruplexes, and even in high-density apartment
buildings. No somber recitations of anthropologists and
sociologists are required to make one visualize the
problems of noise, nuisance, vehicular traffic, and gen-
eral disruption of orderly and peaceful living that could
be brought about by permitting such arrangements."

We agree with amicus to the extent that the
residential nature of a neighborhood is a proper
subject for legislative protection. As stated by the
United States Supreme Court in *Belle Terre,* p 9:

"A quiet place where yards are wide, people few, and
motor vehicles restricted are legitimate guidelines in a
land-use project addressed to family needs. This goal is
a permissible one within *Berman v Parker* [348 US 26;
75 S Ct 98; 99 L Ed 27 (1954)]. The police power is not
confined to elimination of filth, stench, and unhealthy
places. It is ample to lay out zones where family values,
youth values, and the blessings of quiet seclusion and
clean air make the area a sanctuary for people."

But we fail to see how plaintiff's ordinance fur-
thers these goals. We, therefore, must part com-

pany with the United States Supreme Court. In *Belle Terre,* the Supreme Court made no attempt to suggest how a line drawn between the related and the unrelated advances these goals. It merely said that the line drawing was a "legislative, not a judicial, function". We agree that line drawing is a legislative function, but certainly there can be no argument against the well-understood rule of law that the task of deciding whether the line itself is reasonably related to the object of the line drawing is a judicial function.

Here, plaintiff attempts to have us accept its assumption that different and undesirable behavior can be expected from a functional family. Yet, we have been given not a single argument in support of such an assumption, only the assumption. Defendants, on the other hand, relying on decisions from other jurisdictions construing their own state constitutions, present a compelling argument that the means are not rationally related to the end sought.

Those states that have rejected *Belle Terre* have stressed that a line drawn near the limit of the traditional family is both over- and under-inclusive. See *New Jersey v Baker,* 81 NJ 99; 405 A2d 368 (1979); *Santa Barbara v Adamson,* 27 Cal 3d 123; 164 Cal Rptr 539; 610 P2d 436 (1980) (finding over- and under-inclusiveness in the context of a right to privacy challenge). Unrelated persons are artificially limited to as few as two, while related families may expand without limit. Under the instant ordinance, twenty male cousins could live together, motorcycles, noise, and all, while three unrelated clerics could not. A greater example of over- and under-inclusiveness we cannot imagine. The ordinance indiscriminately regulates where no regulation is needed and fails to regulate where

regulation is most needed. As the court said in *Baker, supra,* p 107:

"The fatal flaw in attempting to maintain a stable residential neighborhood through the use of criteria based upon biological or legal relationships is that such classifications operate to prohibit a plethora of uses which pose no threat to the accomplishment of the end sought to be achieved. Moreover, such a classification system legitimizes many uses which defeat that goal. Plainfield's ordinance, for example, would prohibit a group of five unrelated 'widows, widowers, older spinsters or bachelors—or even of judges' from residing in a single unit within the municipality. *Kirsch Holding Co v Borough of Manasquan, supra,* p 248. On the other hand, a group consisting of 10 distant cousins could so reside without violating the ordinance. Thus the ordinance distinguishes between acceptable and prohibited uses on grounds which may, in many cases, have no rational relationship to the problem sought to be ameliorated."

Plaintiff brings to our attention cases from those jurisdictions that have adopted the *Belle Terre* rationale. One in particular, *Town of Durham v White Enterprises, Inc,* 115 NH 645, 649; 348 A2d 706 (1975), is typical of that point of view. There the court said:

"*The State has no particular interest in keeping together a certain group of unrelated persons.* The State has a clear interest, however, in preserving the integrity of the biological or legal family. The promotion of this legitimate government purpose justifies the exclusion of a blood related family from the density requirements of the ordinance which applies to an unrelated household. * * * Hence this classification is not invidious or arbitrary and is constitutional."

Indeed, "the state has no particular interest in keeping together a certain group of unrelated

persons", but, most certainly, it has no business keeping them apart, absent a valid reason for doing so. We have found no such reason in the facts or arguments of this case. We agree with the conclusion of the Pennsylvania appellate court in *Hopkins v Zoning Hearing Board of Abington Twp,* 55 Pa Commw Ct 365, 370; 423 A2d 1082 (1980). In holding that three retarded children could not be excluded from living with a married couple under a zoning family definition similar to the instant case, the court found

"no rational relationship between the restrictive definition of family in the Township ordinance and the state interest to preserve the residential character of the neighborhood".

We know from common experience that, while the motorcycle gang argument is a threatening one, it is more a symbol, one that is not by any stretch of the imagination representative of the lifestyle of the countless people who seek residential living in something other than the biological family setting. As to the specter of a "Work of Satan" group that could slip in if defendants succeed here, we note that if this ordinance were upheld it would not keep out Ma Barker and her sons.

We agree that it would be easier for the plaintiff, with one broad stroke of its legislative brush, to sweep out of its residential neighborhoods a whole class of persons desiring residential accommodations than to have to legislate and enforce against the specific behavior it finds offensive and finds associated with the unrelated class. But protecting the constitutional rights of citizens comes before making life easy for government.

There has been no evidence presented nor do we

know of any that unrelated persons, as such, have any less a need for the advantages of residential living or that they have as a group behavior patterns that are more opprobrious than the population at large. In the absence of such demonstration to justify this kind of classification, the ordinance can only be termed arbitrary and capricious under the Due Process Clause of the Michigan Constitution. The plight of the defendants in this case—who certainly defy the plaintiff's stereotype of the unrelated family—represents the best evidence of the perniciousness of allowing unexamined assumptions to become the basis of regulatory classification.[7]

---

[7] In *Michigan v Long*, — US —; 103 S Ct 3469, 3478; 77 L Ed 2d 1201 (1983), the United States Supreme Court established that cases referring to both state and federal law would be presumed to be based on federal grounds absent a "plain statement that the decision below rested on an adequate and independent state ground". We have relied on no federal decisions to reach our conclusion in this case. It would be disingenuous, however, not to admit that our standards under the Michigan Constitution have been largely influenced by decisions of the United States Supreme Court. In the past, we have found it necessary to enforce the Fourteenth Amendment of the United States Constitution more often than the comparable provision in our own constitution. We have often spoken indistinguishably about the standards governing our respective constitutions and been vague as to which constitution we were interpreting. See, e.g., *Robinson Twp v Knoll*, 410 Mich 293; 302 NW2d 146 (1981), *O'Donnell v State Farm Mutual Automobile Ins Co*, 404 Mich 524; 273 NW2d 829 (1979), *Advisory Opinion on Constitutionality of 1975 PA 227 (Questions 2-10)*, 396 Mich 465; 242 NW2d 3 (1976), and *Manistee Bank & Trust Co v McGowan*, 394 Mich 655; 232 NW2d 636 (1975).

In the present case, we have applied a standard—that the means bear a reasonable relationship to the legislative end—that has its roots in federal constitutional law. Over time, that standard has been adopted by this Court in applying the law of Michigan to a given fact situation. We, therefore, consider that standard applicable to our constitution.

In *People v Victor*, 287 Mich 506; 28 NW 666 (1939), we found a statute prohibiting the giving away of drinking glasses at gas stations to be unreasonable and arbitrary and in violation of the Due Process Clause of the Michigan Constitution, despite that in *Rast v Van Deman & Lewis Co*, 240 US 342; 36 S Ct 370; 60 L Ed 679 (1916), the United States Supreme Court had upheld a similar law which banned the giving away of trading stamps. We applied the same rationality

That government can classify, draw lines around, and support the biological family is well settled, as evidenced by our tax and inheritance laws. Our decision here is not in derogation of the cultural, economic, and moral value of the traditional family and its essential and unique role in our society, but rather is based on the fact that the exclusion of groups such as defendants from a residential neighborhood is not in any way supportive of "family values". Ironically, the enforcement of this ordinance prohibits the two defendant nuclear families from adding to their numbers in a way they choose pursuant to the highest possible motives.

The plaintiff is not, as a result of anything we say here today, without authority to regulate the behavior it finds inimical to its concept of a residential neighborhood, including a rational limitation on the numbers of persons that may occupy a dwelling. Plaintiff need not open its residential borders to transients and others whose lifestyle is not the functional equivalent of "family" life.[8] Nor

test, but we reached a different conclusion. We did not there and we do not now hesitate to reach a conclusion different from that reached by the United States Supreme Court when it is warranted.

For the benefit of the parties to this case and for any future review, we offer the following "plain statement". As should be clear from our outright rejection of *Belle Terre,* our decision here is based solely on the Due Process Clause of the Michigan Constitution, art 1, § 17, notwithstanding the use of a standard originally developed in the federal system.

[8] Without judging them, we note several zoning ordinances that have come to our attention in our research that appear to offer innovative approaches to preserve the family character of a neighborhood without arbitrarily excluding those groups not inimical to that goal. In *Kirsch Holding Co v Borough of Manasquan, supra,* p 247, the ordinance in question described the family as:

"a. One or more persons related by blood or marriage occupying a dwelling unit and living as a single, nonprofit housekeeping unit.

"b. A collective number of individuals living together in one house under one head, whose relationship is of a permanent and distinct domestic character, and cooking as a single housekeeping unit. This

are the plaintiffs precluded from distinguishing between the biological family and a functional family when it is rational to do so, such as in limiting the number of persons who may occupy a dwelling for such valid reasons as health, fire safety, or density control. Although we have criticized the result in *Town of Durham v White Enterprises, Inc, supra*, that decision does point out one factor which distinguishes families from groups of unrelated persons. As the court in *Durham, supra*, p 649, stated:

"If an unrelated household group exceeds the designated density requirement it is by voluntary action of the group. The blood related family by its natural growth may become in excess of the density limit."

We find that plaintiff's ordinance is capricious, arbitrary, and in violation of the Due Process Clause of the Michigan Constitution in that it limits the composition of groups in a manner that is not rationally related to the stated goals of the zoning ordinance.[9]

definition shall not include any society, club, fraternity, sorority, association, lodge, combine, federation, group, coterie, or organization, which is not a recognized religious order, nor include a group of individuals whose association is temporary and resort-seasonal in character or nature".

In *Penobscot Area Housing Development Corp v City of Brewer*, 434 A2d 14, 20 (Me, 1981), the Maine Supreme Court discussed an ordinance that defined the family as

"a single individual doing his own cooking, and living upon the premises as a separate housekeeping unit, or a collective body of persons doing their own cooking and living together upon the premises as a separate housekeeping unit in a domestic relationship based upon birth, marriage or other domestic bond as distinguished from a group occupying a boarding house, lodging house, club, fraternity or hotel".

[9] In view of this conclusion, it is not necessary to consider the defendants' further constitutional arguments concerning our Equal Protection Clause or the abridgement of their religious freedom under either the United States or Michigan Constitutions.

Reversed.

KAVANAGH, LEVIN, RYAN, and CAVANAGH, JJ., concurred with BRICKLEY, J.

WILLIAMS, C.J. (*dissenting*). This case brings into question the constitutionality of a township zoning ordinance which limits the occupancy of single-family residences to not more than two unrelated persons while not limiting the number of persons related by blood, marriage, or adoption. While I agree with the majority's holding that the zoning ordinance is a legitimate exercise of the township's police power under the United States Constitution, I disagree with their conclusion that it violates due process under our state constitution.

The appropriate standard for reviewing a challenge to the constitutionality of a zoning ordinance was set forth by this Court in *Kirk v Tyrone Twp,* 398 Mich 429, 439-440; 247 NW2d 848 (1976):

"The important principles require that for an ordinance to be successfully challenged plaintiffs prove:

" '[F]irst, that there is no reasonable governmental interest being advanced by the present zoning classification itself * * * or

" '[S]econdly, that an ordinance may be unreasonable because of the purely arbitrary, capricious and unfounded exclusion of other types of legitimate land use from the area in question.' *[Kropf v Sterling Heights,]* 391 Mich 139, 158[; 215 NW2d 179 (1974)].

"The four rules for applying these principles were also outlined in *Kropf.* They are:

"1. ' "[T]he ordinance comes to us clothed with every presumption of validity." ' 391 Mich 139, 162, quoting from *Brae Burn, Inc v Bloomfield Hills,* 350 Mich 425; 86 NW2d 166 (1957).

"2. ' "[I]t is the burden of the party attacking to prove affirmatively that the ordinance is an arbitrary and unreasonable restriction upon the owner's use of his

property * * *. It must appear that the clause attacked is an arbitrary fiat, a whimsical *ipse dixit,* and that there is no room for a legitimate difference of opinion concerning its reasonableness." ' 391 Mich 139, 162, quoting *Brae Burn, Inc.*

"3. 'Michigan has adopted the view that to sustain an attack on a zoning ordinance, an aggrieved property owner must show that if the ordinance is enforced the consequent restrictions on his property preclude its use for any purposes to which it is reasonably adapted.' 391 Mich 139, 162-163.

"4. ' "This Court, however, is inclined to give considerable weight to the findings of the trial judge in equity cases." ' 391 Mich 139, 163, quoting *Christine Building Co v City of Troy,* 367 Mich 508, 518; 116 NW2d 816 (1962)."

The majority opinion, however, fails to adhere to these principles and instead applies a rational relationship standard of review which has generally been employed by this Court in non-zoning matters. The majority reasons that because the dispute here concerns occupants of land rather than competing land uses the principles applicable in traditional zoning cases are inappropriate. Regardless of whether an ordinance is viewed as a regulation of land uses or occupants of land, the principles articulated in *Kirk* and other well-established Michigan precedent are nonetheless applicable and should not be so hastily discarded.

Zoning ordinances have long been accorded every presumption of constitutionality. *Kirk, supra,* p 439. Moreover, as mandated by our constitution, this Court is required to liberally construe all constitutional provisions and laws pertaining to counties, townships, cities and villages. Const 1963, art 7, § 34.

This judicial deference to the validity of municipality zoning laws is premised on the fact that

zoning matters are essentially legislative and not judicial functions. In *Brae Burn, Inc v Bloomfield Hills, supra,* pp 430-431, this Court elaborated on this fundamental principle:

"[T]his Court does not sit as a superzoning commission. Our laws have wisely committed to the people of a community themselves the determination of their municipal destiny, the degree to which the industrial may have precedence over the residential, and the areas carved out of each to be devoted to commercial pursuits. With the wisdom or lack of wisdom of the determination we are not concerned. The people of the community, through their appropriate legislative body, and not the courts, govern its growth and its life. Let us state the proposition as clearly as may be: It is not our function to approve the ordinance before us as to wisdom or desirability. For alleged abuses involving such factors the remedy is the ballot box, not the courts. We do not substitute our judgment for that of the legislative body charged with the duty and responsibility in the premises. As Willoughby phrased it in his treatise, Constitution of the United States (2d ed, 1929), vol 1, § 21, p 32: 'The constitutional power of a law-making body to legislate in the premises being granted, the wisdom or expediency of the manner in which that power is exercised is not properly subject to judicial criticism or control.' We held similarly in *Tel-Craft Civic Ass'n v Detroit,* 337 Mich 326, 331 [60 NW2d 294 (1953)]:

" 'Unless it can be shown that the council acted arbitrarily or unreasonably, their determination is final and conclusive and no court may alter or modify the ordinance as adopted.

" ' "While it is within the province of the courts to pass upon the validity of statutes and ordinances, courts may not legislate nor undertake to compel legislative bodies to do so one way or another." ' "

Thus, it is not for this Court to second-guess the wisdom of local zoning authorities absent a show-

ing that the ordinance is an arbitrary and capricious restriction and serves no governmental interest.

A companion rule to the judicial deference accorded to zoning matters is that the burden of proof rests upon the party attacking the validity of a zoning ordinance. Not only does the majority opinion bypass the extraordinary deference usually given to zoning ordinances, but it also appears to have impermissibly shifted the burden of proof onto plaintiff. The majority refers to the fact that the plaintiff has not convinced them that the classification at hand is reasonably related to the achievement of the stated goals of the ordinance. It is not, however, the plaintiff's burden to demonstrate the reasonableness of the ordinance, but rather it is defendants' burden to affirmatively prove the arbitrariness and capriciousness of the classification.

One of several reasons advanced by plaintiff in support of the ordinance is that it was designed to preserve traditional family values. It is clearly within the state's police power to zone and regulate land use in promotion and preservation of the sanctity of the traditional family lifestyle. *Village of Belle Terre v Boraas,* 416 US 1, 9; 94 S Ct 1536; 39 L Ed 2d 797 (1974); see also *Palo Alto Tenants Union v Morgan,* 321 F Supp 908 (ND Cal, 1970), aff'd 487 F2d 883 (CA 9, 1973). The United States Supreme Court held in *Belle Terre* that the preservation of family values was a proper subject for zoning:

"A quiet place where yards are wide, people few, and motor vehicles restricted are legitimate guidelines in a land-use project addressed to *family needs.* This goal is a permissible one within *Berman v Parker* [348 US 26; 75 S Ct 98; 99 L Ed 27 (1954)]. The police power is not

confined to elimination of filth, stench, and unhealthy places. It is ample to lay out zones where *family values,* youth values, and the blessings of quiet seclusion and clean air make the area a sanctuary for people." (Emphasis added.) 416 US 9.

The special values the local legislative body might consider in its zoning decision might well be more expansive, but just as fundamental, as those mentioned by the United States Supreme Court. A biological family, for example, could have concerns about schools that other living units either might not share or might even actively oppose.

The importance of the family was reaffirmed in the case of *Moore v East Cleveland,* 431 US 494; 97 S Ct 1932; 52 L Ed 2d 531 (1977), wherein the Court struck down an ordinance which prohibited extended biological or legal families to live in an area zoned for single-family dwellings. Justice Powell, writing for the plurality of the Court, distinguished *Belle Terre* as a case in which "family needs" and "family values" were promoted since the ordinance there barred only unrelated persons whereas the ordinance in *Moore,* by restricting the number of related persons who could live together, had sliced "deeply into the family itself". 431 US 498. Justice Powell also noted the foundational role of the family in our society:

"Our decisions establish that the Constitution protects the sanctity of the family precisely because the institution of the family is deeply rooted in this Nation's history and tradition. It is through the family that we inculcate and pass down many of our most cherished values, moral and cultural." 431 US 503-504.

Justice Brennan, joining in the plurality opinion of *Moore,* wrote a separate concurrence, emphasizing the "preferred position" of the family:

"Whether it be the extended family of a more lei-
surely age or the nuclear family of today the role of the
family in raising and training successive generations of
the species makes it more important, we dare say, than
any other social or legal institution * * *. If *any free-
dom not specifically mentioned in the Bill of Rights
enjoys a 'preferred position' in the law it is most
certainly the family."* (Emphasis supplied by the Court,
quoting from the Village of Belle Terre's brief.) 431 US
511.[1]

Decisions from other state jurisdictions which
have addressed identical constitutional challenges
to zoning ordinances similar to the ordinance in
the instant case have upheld their respective ordi-
nances on the ground that maintenance of a tradi-
tional family environment constitutes a reasonable
basis for excluding uses that may impair the sta-
bility of that environment and erode the values
associated with a traditional family style of life.
See *Rademan v City of Denver,* 186 Colo 250; 526
P2d 1325 (1974); *Town of Durham v White Enter-
prises, Inc,* 115 NH 645; 348 A2d 706 (1975); *Ass'n
for Educational Development v Hayward,* 533
SW2d 579 (Mo, 1976); *Penobscot Area Housing
Development Corp v City of Brewer,* 434 A2d 14
(Me, 1981); see, generally, Anno: *Validity of ordi-
nance restricting number of unrelated persons
who can live together in residential zone,* 12
ALR4th 238.

The two out-of-state cases cited by the majority
in support of the claim that an ordinance drawn
too close to the traditional family model is an
over- and under-inclusive classification, *New Jer-*

---

[1] Our national recognition of family values is consonant with reli-
gious traditions, where the family is central. We express family
concerns in our laws in many ways; for example, family connections
are priority considerations in immigration preferences, 8 USC 1153,
and in draft deferments, 50 USC Appendix 456(h).

*sey v Baker,* 81 NJ 99; 405 A2d 368 (1979), and *Santa Barbara v Adamson,* 27 Cal 3d 123; 164 Cal Rptr 539; 610 P2d 436 (1980), are wholly inapplicable in the instant case because they apply a different standard of review from that of *Kropf* and its progeny.

The majority does not dispute the township's police power to enact ordinances supportive of the biological or legal family but does point out that the ordinance in the instant case is an unreasonable exercise of that power because less restrictive means might have been chosen to accomplish the same objective. Whether a municipality could have adopted less restrictive means to achieve the same goals is not a controlling factor in considering the constitutionality of a zoning ordinance. Rather, a reviewing court's focus should be upon whether there exists some reasonable basis for the means actually employed. In making such a determination, if any state of facts either known or which could reasonably be assumed is presented in support of the ordinance, this Court must defer to the legislative judgment. *Robinson Twp v Knoll,* 410 Mich 293, 339; 302 NW2d 146 (1981) (dissent of MOODY, J.); *Shavers v Attorney General,* 402 Mich 554, 613-614; 267 NW2d 72 (1978).

Zoning matters necessarily involve difficult choices between the inclusion of certain land uses and the exclusion of others in a particular area. The drawing of these lines is exclusively a legislative judgment. In *Village of Belle Terre v Boraas, supra,* 416 US 8, the United States Supreme Court specifically addressed this restriction on the power of the judiciary in zoning cases:

"It is said, however, that if two unmarried people can constitute a 'family,' there is no reason why three or four may not. But every line drawn by a legislature

leaves some out that might well have been included. That exercise of discretion, however, is a legislative, not a judicial, function."

In my opinion, the majority has overstepped its bounds as a judicial body and has intruded into the legislative sphere by acting as a superzoning commission contrary to the pronouncement by the United States Supreme Court in *Belle Terre* and this Court in *Brae Burn, Inc, supra,* pp 430-431. The majority goes so far as to give examples of ordinances from other states which they suggest offer innovative approaches to preserve the family character of a neighborhood in a more rational manner than the ordinance in the instant case. These references are of legitimate interest to the Legislature, but not to the judiciary. The task of line drawing is solely a legislative one, and this Court should not even attempt to interfere in this legislative function.

On the basis of the record in the instant case, defendants have not sustained their burden of proof so as to rebut the presumption favoring the ordinance's validity. It is not enough that defendants present evidence which raises a debatable question as to the reasonableness of the ordinance. The defendants must present sufficient evidence to prove that there is no room for a fair and legitimate difference of opinion that the classification drawn is an unreasonable exercise of the township's police power. This defendants have failed to do.

For the foregoing reasons, I respectfully dissent. Accordingly, I would affirm the decision of the Court of Appeals.

BOYLE, J., concurred with WILLIAMS, C.J.